New England Telephone and Telegraph Company *vs.* Department of Public Utilities & another.

Suffolk.   October 17, 18, 1927.— January 6, 1928.

Present: Braley, Crosby, Pierce, & Wait, JJ.

*Public Utilities Department. Supreme Judicial Court. Equity Jurisdiction,* Review of order of public utilities department, Plaintiff's clean hands. *Telephone Company. Interstate Commerce. Constitutional Law,* Interstate commerce, Public utilities. *Equity Pleading and Practice,* Reservation.

While the rule, that, in a suit in equity by a corporation under G. L. c. 25, § 5, to review, modify, amend or annul rulings and orders of the department of public utilities, the court will not hear evidence to review or revise findings of fact made by the department, does not require exclusion by a single justice of evidence offered by the plaintiff to show that the action of the department resulted in confiscation of its property and undue interference with its right of management of its business where there is not in the record any finding of fact by the department upon those issues, a plaintiff is not harmed by the exclusion of such

evidence by a single justice if it appears that the evidence offered before the single justice was no fuller nor more convincing than evidence which the record shows was offered before the department, although the record also shows that the department decided that the evidence before it was immaterial: the full court on reservation and report is not bound by the decision of the department that the evidence was immaterial, and can give that evidence due weight.

*Whether* a defendant in a suit in equity is entitled to maintain a motion to reserve a case for the full court upon the bill and answer if such motion is opposed, was not determined.

A telephone company, operating in this Commonwealth and transmitting messages also in interstate commerce, brought a bill in equity under G. L. c. 25, § 5, to review, modify, amend or annul orders of the department of public utilities, entered after a hearing of a complaint under G. L. c. 159, § 16, by a hotel company which was conducting a large hotel and to which the telephone company had refused service because it was not permitted to pull the wires to which its instruments were to be connected for such service. The orders in substance were that, instead of a practice theretofore established by the telephone company to own, control and install by workmen in its employ all telephone apparatus and all wiring which enters into the transmission of speech over its system and its connections, "the just and reasonable practice hereafter to be in force and to be observed by the . . . [telephone company] with respect to applicants who properly install wires suitable for the service applied for, and who, prior to or at the time of the connection of the Telephone Company's service, convey title to and surrender control of such wires to the Telephone Company without charge, is that the Telephone Company furnish such applicants telephone service by connecting with such wires"; and further that the telephone company for a certain sum furnish a certain type of service in the hotel by connecting with wires then in place which had not been pulled by the telephone company. It appeared that an agreement amounting to an oral contract had been made between the telephone company and the hotel company respecting the installation by the telephone company of its wires and instruments according to its established practice, of which the hotel company knew, but that the carrying out of the agreement was stopped by an illegal strike of workmen of other contractors in the building because the telephone company in its work employed nonunion men. *Held*, that

(1) The profession of service by the telephone company was not merely for transmission by such means, in such ways, and by such persons as it pleased, but was the more general one described in G. L. c. 159, § 12 (d); and the company was subject to the supervision of the department described in that statute;

(2) Whether the order of the department was reasonable was a question of law, and the court therefore had jurisdiction of the suit;

(3) The department's requirement that the telephone company become owner of property which later it might be called on to reject because it was incompatible with performing the service which it undertook to give was an unreasonable interference with the company's rights of property; and its substitution of the judgment of others for that

of the telephone company in determining whether certain wires were suitable and were properly installed was an interference with a detail of management in the administration of the business of the telephone company which went beyond the reasonable limit of public control;

(4) The order was illegal because it imposed a burden upon interstate commerce carried on by the telephone company in that by reason of it the company would have to undertake investigation of wires and wiring not selected and constructed under its direction, and be charged with disposing of them if found unsuitable;

(5) The orders of the department were annulled.

While the department under G. L. c. 159, §§ 12 (d), 16, had jurisdiction to receive and hear a complaint against the telephone company for refusal to grant service, and the complainant's remedy was not confined to a bill in equity under G. L. c. 166, §§ 14, 15, it had no jurisdiction to go beyond the express terms of said § 12 (d), which confine its supervisory and regulative power to service by the telephone company in transmission "within the Commonwealth"; and it was in error in making an order affecting transmission of intelligence in interstate commerce carried on by the telephone company.

Although the hotel company, in the circumstances above described, was a participant in unwarranted conduct which included unlawful strikes by union workmen constructing its building, the department decided that, as a general proposition, the personal merit of the complainant before it was immaterial if the practice brought before it by the proceeding which the complainant instituted under G. L. c. 159, § 16, was one in which the public generally had an interest and was unjust, unreasonable, unsafe, improper or inadequate, and that a valid order could be made thereon, in appropriate circumstances. *Held,* that in that respect the decision of the department was sound.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 20, 1926, under G. L. c. 25, § 5, and described in the opinion.

The suit was reserved and reported by *Carroll,* J., upon the pleadings, the offer of proof made by the plaintiff and stated in the opinion, his rulings thereon, and the plaintiff's exceptions thereto.

By St. 1919, c. 350, § 117, the department of public utilities succeeded the public service commission as to all powers conferred by St. 1913, c. 784.

St. 1913, c. 784, § 2 (c), reads as follows:

"The commission shall, so far as may be necessary for the purpose of carrying out the provisions of this or any other act, have general supervision and regulation of, and jurisdiction and control over, the following services, when furnished or rendered for public use within the Commonwealth,

and all persons, firms, corporations, associations and joint stock associations or companies, hereinafter in this act collectively called common carriers and severally called a common carrier, furnishing or rendering any such service or services: . . .

"The transmission of intelligence within the Commonwealth by electricity, by means of telephone lines or telegraph lines or any other method or system of communication, including the operation of all conveniences, appliances, instrumentalities, or equipment utilized in connection therewith or appertaining thereto."

The foregoing provisions, excepting for textual changes immaterial to this decision, became G. L. c. 159, § 12 (d).

*J. N. Clark,* (*C. S. Pierce* with him,) for the plaintiff.

*C. F. Lovejoy,* Assistant Attorney General, for the department of public utilities.

*L. A. Mayberry,* (*W. V. Taylor* & *W. F. Levis* with him,) for Hotels Statler Company, Incorporated.

WAIT, J.   This is a bill in equity under G. L. c. 25, § 5, to review rulings and orders of the public utilities department which were made as a result of, or in the course of, proceedings before the commission instituted under G. L. c. 159, § 16, by The Hotels Statler Company, Incorporated (hereinafter called the hotel company) against the New England Telephone and Telegraph Company (hereinafter called the telephone company).

The bill is brought by the telephone company against the hotel company and the five commissioners who have the supervision and control of the department, and it prays that the court will "review, modify, amend or annul" the rulings and orders referred to in the petition, will decree that they are null and void, will stay their enforcement until further order of the court, and will grant such further relief as justice and equity require.   The case came on to be heard in the Supreme Judicial Court for Suffolk County upon motion by the hotel company, in which the Attorney General joined, that the case be reserved for the full court upon the bill and the answers thereto.   The bill set out as exhibits the full evidence and arguments had before the commissioners,

the requests for rulings of both parties, and the decision and orders of the department, with the petitions, amendments and motions of the parties.

The telephone company objected, claiming that issues of fact were presented by the pleadings which should be passed upon before the case was ripe for determination.   It offered proof upon three issues: the fact that the telephone company was engaged in interstate commerce which was affected by the orders; the fact that a contract existed between the hotel company and the telephone company which was invaded by the orders; and that the hotel company in instituting and prosecuting these proceedings was participating in an illegal conspiracy and had no standing to request the orders.   The single justice ruled that the telephone company was not entitled to introduce any evidence under the bill, and that the case must be decided upon the record of the proceedings before the commission.   To this the plaintiff excepted. It made an offer of proof which, subject to its exception, was rejected.   The single justice thereupon, also subject to exception, reserved the case for the full court, and reserved and reported it upon the bill, answers, offer of proof, rulings thereon and exceptions thereto.

The plaintiff presses these exceptions.

The law is established that, upon an appeal under G. L. c. 25, § 5, the court will not hear evidence to review or revise findings of fact made by the department.   No power is given to rehear facts.   *Boston & Albany Railroad* v. *New York Central Railroad,* 256 Mass. 600, 617, *et seq.   City Council of Salem* v. *Eastern Massachusetts Street Railway,* 254 Mass. 42, 45.   *Donham* v. *Public Service Commissioners,* 232 Mass. 309, 327, 328.   The parties must not withhold evidence from the department and produce it in court.   See *Cincinnati, New Orleans & Texas Pacific Railway* v. *Interstate Commerce Commission,* 162 U. S. 184, 196; *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510, 526.   Where, however, there is no finding of fact material to the plaintiff's right to review, this rule does not forbid the presentation of evidence to establish it.   Such evidence is not offered in rehearing of issues of fact decided by the department, but as

the basis in fact to support a claim of right.  Unless such evidence is admissible, the right to review given by the statute is not broad enough to secure due process of law, and the statute may be rendered unconstitutional.  See *Opinion of the Justices*, 251 Mass. 569, 611, 613.  There must be a fair opportunity for submitting the issue of confiscation or of undue interference with the right of management to a judicial tribunal for determination upon its own independent judgment as to both law and facts.  *Ohio Valley Water Co.* v. *Ben Avon Borough*, 253 U. S. 287.  *Bluefield Water Works & Improvement Co.* v. *Public Service Commission*, 262 U. S. 679, 689.  *Ohio Utilities Co.* v. *Public Utilities Commission*, 267 U. S. 359.  *Northern Pacific Railway* v. *Department of Public Works*, 268 U. S. 39.  *Oregon Railroad & Navigation Co.* v. *Fairchild, supra.*

In the case before us there is evidence reported which justifies findings in accord with the contentions of the plaintiff.  While it is true that the commission made no such findings, neither did it find to the contrary.  This court is not bound by the decision of the commission that the evidence was immaterial, and can give it due weight.  There is nothing to suggest that fuller or more convincing evidence than was introduced before the commission was sought to be presented to the court.  The plaintiff, consequently, has not been prejudiced by the refusal to take the evidence offered and its exceptions in connection therewith are, therefore, overruled.

We do not pause to determine whether a defendant can maintain a motion to reserve a case for the full court upon the bill and answers.  The plaintiff has not argued the matter and we treat it as waived.

It is not necessary to take up *seriatim* the many requests and rulings presented.  The plaintiff has discussed them under five headings and we shall deal with them in the same way.

Material facts may be stated as follows: The hotel company contemplated the erection of a large building in Boston to be used in part for offices and in part as a hotel with a large number of rooms for guests and for hotel purposes.

Telephone service both for offices and for hotel use was essential to the financial success of the undertaking. The telephone company was in control of furnishing such service. In 1922 the hotel company began negotiations with the telephone company with regard to telephone service. The plans for the building were submitted to the telephone company and it entered upon a study of the structural and mechanical problems to be considered in supplying such service as the hotel company required. These studies and negotiations resulted in an understanding that the building would be constructed in accord with certain plans which eventually provided for construction of conduits for telephone wires by the hotel company in the building, and construction of cables, switchboards, wires, etc., by the telephone company, to be placed by it in the streets for connections between the building and the telephone exchange, or in the building for the appliances to be installed there. The conduits forming part of the building were the property of the hotel company. The telephone material was to remain the property of the telephone company and subject to its control, although attached to the building. The only payment to be made the telephone company was the usual service charge for service and installation of the telephones in the building to be paid by individual subscribers, of whom the hotel company would be one. These negotiations did not result in a written contract. That, however, a contractual relation existed between the companies is manifest. It was understood that the telephone wiring was to be done by the telephone company. The hotel company was to have a building equipped with conduits according to the structural plan agreed upon, and the telephone company was to create, have ready and install whatever else was necessary for telephone service to, from, and within the building. Both companies incurred large expense in their preparations. In contracting for the erection of the building the hotel company made no contract, and no subcontract was made, for supplying materials or labor for the telephone wiring.

The telephone company's practice has been to own, control, and install by workmen in its employ all telephone

apparatus and all wiring which enters into the transmission of speech over its system and its connections. A few exceptions to this practice exist, but it has been maintained substantially without exception. It was the expectation of the telephone company that it would be followed in this case. We think it must be assumed that the hotel company was aware of both practice and expectation. The construction of the building went forward till, in 1926, occasion arose for the pulling of wires from the feed cable, already laid by the telephone company, through certain of the conduits to places where telephones were to be set up. Then workmen, employed by the subcontractor for all wiring other than that which it had been contemplated the telephone company should install, insisted that the pulling of these telephone wires should be done by union workmen affiliated with the American Federation of Labor. The employees of the telephone company were not so affiliated. Strikes, first of the employees of the wiring subcontractor and later of all workmen employed on the building, were inaugurated to compel compliance with this demand. There was no trade dispute between the wiring subcontractor and his workmen, nor between the other workmen on the building and their several employers, nor between the telephone company and its employees. There were, however, strikes. The hotel company was threatened with great loss if the speedy completion and use of its building was delayed, and also with great loss if neither itself nor its tenants could secure telephone service. The telephone company was threatened with great loss, if it departed from its practice of insisting upon installation of telephone wiring by its employees, if it were unable to use the material prepared specially at great expense for use in the building; and also if it departed from its understanding with its employees that all telephone wiring should be done by them. The hotel company sought the assistance of the telephone company. The latter refused to depart from its practice, but offered to give telephone service if admitted to the building. The former was willing to do anything it could consistent with avoiding strikes; but

could not allow men to work in the building pulling wires who were not affiliated with the American Federation of Labor.

The situation was deliberately brought about by the union men either to force the employment of union labor affiliated with the American Federation of Labor by the telephone company, or to compel it to abandon its policy of having all telephone wiring pulled by its employees. The hotel company made no appeal to the courts.

Wires were pulled by these union employees to room 727, and thereupon the hotel company requested of the telephone company telephone service at that room. The telephone company declared its readiness to furnish the service by means of wires owned and controlled by it and pulled by its employees. The hotel company demanded service over the wires already installed. This was refused. The hotel company petitioned the department under G. L. c. 159, § 16, to compel service over the wires installed by the subcontractor's men and to order that the telephone company discontinue the policy of refusing to connect telephones to and to give service over wires installed by others than its own employees. Other prayers were made, but enough is indicated to meet the requirements of this decision. The commission decided that the wires so pulled are of the kind usually used by the telephone company for the sort of service requested, are appropriate and adequate, are properly installed, and connecting with them would not impair or interfere with the service of that company. After hearing the evidence set out as exhibits to the petition, the commission determined that "the just and reasonable practice hereafter to be in force and to be observed by the New England Telephone and Telegraph Company with respect to applicants who properly install wires suitable for the service applied for, and who, prior to or at the time of the connection of the Telephone Company's service, convey title to and surrender control of such wires to the Telephone Company without charge, is that the Telephone Company furnish such applicants telephone service by connecting with such wires, and hereby fixes and prescribes the same by order to be served upon the New England Telephone and Telegraph

Company," and further ordered the telephone company to furnish service of a specified classification to room 727 "by connecting with the wires now pulled to that room from the basement of said building."

The plaintiff contends that the orders are invalid because the department has acted in contravention of the constitutional rights of the telephone company by unlawfully invading its right of management of its private property and business; by unlawfully requiring it to employ its private property in a service which it has not undertaken or professed to render; and by unjustly and unreasonably interfering with its private property rights by orders which are in themselves unreasonable. It does not deny that it is engaged in "the transmission of intelligence within the Commonwealth by electricity, by means of telephone lines" and by "the operation of all conveniences, appliances, instrumentalities, or equipment appertaining thereto, or utilized in connection therewith"; and is, thus, by G. L. c. 159, § 12 (d), subjected to the general supervision and regulation, jurisdiction and control of the department of public utilities. The law is settled that the exercise of such control is constitutional, *Vermilye* v. *Western Union Telegraph Co.* 207 Mass. 401, and that to some extent the property and the right of management of the persons furnishing such service for public use may be affected and curtailed. *Atlantic Coast Line Railroad* v. *North Carolina Corp. Commission*, 206 U. S. 1. *Postal Telegraph Cable Co.* v. *Chicopee*, 207 Mass. 341, 347. Nevertheless their property cannot be taken without compensation, nor their right of management be unreasonably curtailed under the guise of supervision, regulation and control. *Board of Public Utility Commissioners* v. *New York Telephone Co.* 271 U. S. 23. They cannot be required to furnish a service which they do not hold themselves out as undertaking to furnish. See *Missouri Pacific Railway* v. *Larabee Flour Mills Co.* 211 U. S. 612, 619. This, however, does not enable them to defeat regulation by professing an undertaking to furnish the service only in a particular way. See *Western Union Telegraph Co.* v. *Foster*, 224 Mass. 365.

We cannot agree that the telephone company's profession of service is as limited as the company claims. It offers to transmit intelligence by telephone instruments over telephone lines. The offer is not merely for transmission by such means, in such ways, and by such persons as it pleases. In return for the rights in ways and elsewhere contributed by the public it must yield something of unlimited discretion in the use of its property and the management of its business. The question before us is, whether the limitation established by the department is warranted by the law. It is not so warranted if it is unreasonable. *Oregon Railroad & Navagation Co.* v. *Fairchild*, 224 U. S. 510. See *New York* v. *Public Service Commission*, 269 U. S. 244; *Pennsylvania Gas Co.* v. *Public Service Commission*, 252 U. S. 23. Whether this order is reasonable, on the record, is a question of law. If it were not, then this court could not act in review of the order made because, by the statute authorizing the appeal which brings it before us, the jurisdiction granted is "to review, modify, amend or annul any ruling or order of the commission, or of any member or members representing the commission, but only to the extent of the unlawfulness of such ruling or order." G. L. c. 25, § 5. The court cannot intervene because of any difference of opinion with regard to the wisdom of any order made in the exercise of their jurisdiction by the commissioners of the department. *New York* v. *McCall*, 245 U. S. 345. Only to the extent that it transcends the law can we deal with it. *City Council of Salem* v. *Eastern Massachusetts Street Railway*, 254 Mass. 42.

The telephone company insists that the proper performance of its function in the transmission of speech requires that it shall own and control the wires over which the transmission of speech takes place. See *Gardner* v. *Providence Telephone Co.* 23 R. I. 262. The commission confirms this claim by requiring in its orders that one insisting on service shall convey title to the wires and surrender control of them to the telephone company. The company further insists that such proper performance also necessitates that the wires be pulled or put in place by workmen subject to its control; for only thus can it be assured that they are proper

and properly installed.   The commission denies this claim, and by its order required that, without regard to who has selected the wires and put them in place, the company shall connect with them if they are properly installed and suitable for the service applied for.   The commission declares that if experience should demonstrate that the service over the wires to room 727, to which it orders the telephone company to connect, cannot be given without impairing its general service, it would be justified in discontinuing the service until it could remedy the defect.   See *Northern Pacific Railway* v. *Department of Public Works*, 268 U. S. 39, 45.   Thus it requires the telephone company to become owner of property which later it may be called on to reject because it is incompatible with performing the service which it undertakes to give.   This is an unreasonable interference with its rights of property.   The determination whether certain wires are suitable and are properly installed is a detail of management in the administration of the business of the telephone company.   To substitute the judgment of others for that of the telephone company in that matter is an interference with the right of management which goes beyond the reasonable limit of public control.   It is similar to the control attempted to be exercised by the State of Wisconsin in requiring the upper berths in sleeping cars to be kept closed when not in use, which was held to be unconstitutional in *Chicago, Milwaukee & St. Paul Railroad* v. *Wisconsin*, 238 U. S. 491. ` See also *South Western Telephone Co.* v. *Public Service Commission*, 262 U. S. 276; *Banton* v. *Belt Line Railway*, 268 U. S. 413; *Great Northern Railway* v. *Minnesota*, 238 U. S. 340.   No general conditions of public necessity are shown to make the orders appropriate and essential for the adequate and equal performance of the service for the public.   The decision of the department discloses that the action is taken to put an end to a particular instance of hardship.

The telephone company contends that the action taken is an interference with interstate commerce, and is thus beyond the power of the department.   There is no dispute that telephone instruments installed in the building will be

used in transmitting intelligence not only within this Commonwealth but also throughout the United States and elsewhere in the world where telephonic communication is maintained through connection with the lines of the telephone company, and that while so transmitting speech the instruments and wires will form part of one whole extending from the speaker to the ultimate receiver. No discussion is necessary to show that such service is interstate in character, and that the person rendering it is engaged in interstate commerce. The orders affect interstate commerce. That, however, of itself, does not render them void. *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364. Congress has not yet undertaken by legislation to regulate the use of the telephone in interstate commerce, and until it acts there is a field for activity by the State. See *Minnesota Rate Cases*, 230 U. S. 352, 398, 402. *DiSanto* v. *Pennsylvania*, 273 U. S. 34. *Postal Telegraph Cable Co.* v. *Chicopee, supra. Vermilye* v. *Western Union Telegraph Co., supra.* If the action taken under authority from the State burdens interstate commerce, then it is beyond the power of the State and is invalid. *Western Union Telegraph Co.* v. *Foster*, 247 U. S. 105. *Napier* v. *Atlantic Coast Line Railroad*, 272 U. S. 605. *Oregon-Washington Railroad & Navigation Co.* v. *Washington*, 270 U. S. 87. The orders in question impose such a burden. Compare *Public Utilities Commission* v. *Attleboro Steam & Electric Co.* 273 U. S. 83. It is manifest that expense is imposed upon the telephone company if, as is certain, it must undertake investigation of wires and wiring not selected and constructed under its direction, and be charged with disposing of them if found unsuitable. The orders, consequently, are illegal.

We do not rest our decision upon any interference with the sphere of control assumed by the Congress under the Act of February 28, 1920, c. 91, § 418; 41 U. S. Sts. at Large, 484. That section seems to us to deal with rates and charges and practices relating thereto. The orders in question do not relate to rates and charges. If we are wrong in this, there can be no doubt that the orders affect directly interstate

commerce within the sphere covered by congressional legislation and, beyond question, are void.

The plaintiff further contends that the commission was without jurisdiction to make either the general or the special order. We understand this to refer to jurisdiction conferred by the Commonwealth. It maintains that such jurisdiction as exists to require service to be furnished as the result of an application by an individual is conferred by G. L. c. 166, §§ 13, 14 (originally St. 1885, c. 267), and by G. L. c. 166, §15 (§ 3 of the original act), is vested in the Superior and the Supreme Judicial courts. Such administration, supervision and control over the transmission of intelligence by electricity as existed before the creation of the department of public utilities was first provided for by St. 1906, c. 433, and was conferred upon the Massachusetts highway commission by that act. In 1913 the powers of the highway commission over the service were transferred to the public service commission, St. 1913, c. 784, and additional authority was conferred upon the latter. Section 29 declared that the act was to be construed as remedial and "in enlargement and extension of all previous acts and existing laws conferring upon or vesting in the commission any jurisdiction, powers or discretion with respect to any subject or matter treated in this act." The "commission" here referred to was created by the act. No authority had previously been given it. The words must be taken to refer to jurisdiction, powers or discretion wherever existing formerly, which were vested in the public service commission by the statute. So understood, it results that language, which, when it was earlier used, related to carriers in services other than the transmission of intelligence by electricity, was henceforth to be applicable, so far as it was appropriate, to the service rendered by persons engaged in the transmission of intelligence by electricity. Section 23 provided that "Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the regulations, practices, equipment, appliances or service of any common carrier, now or hereafter subject to its jurisdiction, are unjust, unreasonable, unsafe, improper or inadequate, the commission shall

determine the just, reasonable, safe, adequate and proper regulations and practices, thereafter to be in force and to be observed, and the equipment, appliances and service thereafter to be used and shall fix and prescribe the same by order to be served upon every common carrier to be bound thereby." The petition of the hotel company complaining of the telephone company was based upon this section, which, after amendment, here unimportant, by St. 1916, c. 244, had become G. L. c. 159, § 16. It is within its language; and, although it asks for other action in addition and may be too broad, it is a complaint thereunder. We have no doubt that the commission had jurisdiction to consider the complaint. The jurisdiction exists, although the action taken may transcend it. We do not agree with the contention that a complaint based upon a refusal of service to an individual can be brought only under G. L. c. 166, § 14. Jurisdiction to consider it may also be conferred by G. L. c. 159, § 16. The statute, however, by express terms confines the supervisory and regulative power which it confers, to service in transmission "within the Commonwealth." The service sought to be secured by the hotel company and affected by the practice of which it complained, was not so limited. As we have already decided, interstate commerce was affected, and, in this case, therefore, the orders made were beyond the power of the commission. Jurisdiction to receive and hear existed, but not jurisdiction to grant the remedy actually decided upon. It is not necessary to define further the limits of jurisdiction severally conferred by G. L. c. 166 and G. L. c. 159.

The contention of the plaintiff that the hotel company had disqualified itself by its conduct from securing favorable action from the commission, and that the order should be set aside for that reason, need not be considered at length. The findings of fact made by the commission as matter of law established that the strikes were illegal. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, and cases there cited. Compare *Anderson* v. *Ship Owners Association*, 272 U. S. 359; *United States* v. *Brims*, 272 U. S. 549; *Bedford Cut Stone Co.* v. *Journeymen Stone Cutters' Association*, 274 U. S. 37.

The position of the hotel company, however unfortunate, was that of a participant in an unwarranted combination. *Aberthaw Construction Co.* v. *Cameron,* 194 Mass. 208. We think, however, that the decision of the commissioners is sound, that, as a general proposition, the personal merit of the complainant is immaterial if the practice which he brings before the department is one in which the public generally has an interest and is unjust, unreasonable, unsafe, improper or inadequate, and that a valid order can be made thereon, in appropriate circumstances. In the particular case before us, circumstances are not appropriate.

It follows that the orders appealed from must be annulled, and it is

*So ordered.*