## FRANCIS G. MENTZER *vs.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

## MOSES H. MENTZER & another *vs.* SAME.

Worcester.   May 19, 1931. — September 10, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Telephone Company. Fire. Contract,* Construction. *Agency,* Scope of authority. *Practice, Civil,* Parties. *Actionable Tort. Evidence,* Competency.

Statement by RUGG, C.J., as to the general nature of service furnished to subscribers by a telephone company.

The owner of a house in a town having merely one small piece of fire apparatus was a subscriber of a telephone company operating in that locality.  He had paid all charges, and was entitled at all times to unlimited exchange and toll service.  The house having caught fire, he by telephone identified himself to the central operator and stated that the house was on fire and that he "wanted" the fire department of the adjoining town, "as there is ample time to save this house if they come now."  The operator answered, "All right, I will call them."  The owner did not remain at his telephone to await the connection,

although he then was under no exigency from the fire to leave the telephone before the connection was made. The operator did not call the fire department of the second town, which had complete fire fighting units ready for instant use and which would have come to the house at once if notified. The house was destroyed as a proximate result of the operator's not having made such call. A woman neighbor, once of her own volition and once at the request of a member of the owner's family, tried to get connection with the fire department of the second town on her own telephone, but was told by the operator that she had no authority to call that fire department without permission from some official of the first town. It was the advertised practice of the operators of the telephone company, in emergencies, to take the name and address wanted and the nature of the emergency and to make the connection without the subscriber's giving the number; and also, in case it were impossible for the subscriber to remain at the telephone, to call the person wanted and to pass the message on to him. In an action of contract or tort against the telephone company for the loss of the house, it was *held*, that

(1) The practice of the defendant in emergencies did not entitle subscribers to have messages transmitted by the defendant's operators when it was possible for the subscribers to remain at the telephone and deliver them;

(2) In the circumstances, the plaintiff had failed to comply with the defendant's practice by leaving his telephone after requesting the operator to call the fire department of the second town;

(3) The statement by the operator to the plaintiff, that she would call that fire department, was not within the scope of her authority from the defendant and did not bind the defendant;

(4) Although the failure of the operator to connect the plaintiff's neighbor with the fire department was a breach of the neighbor's contract with the defendant, that breach of duty afforded no right of action to the plaintiff;

(5) On the whole record, no breach of duty to the plaintiff by the defendant was shown by the failure of the operator to convey the plaintiff's message to the fire department;

(6) The plaintiff could not recover;

(7) An advertisement by another telephone company, not issued by or under the authority of the defendant and not representing to the public that its operators would receive and deliver messages to a fire department, properly was excluded;

(8) A series of bills from the defendant to the plaintiff were irrelevant and properly were excluded;

(9) Evidence of a conversation between the plaintiff's wife and the neighbor, in which the wife directed the neighbor to call the fire department, had no materiality and properly was excluded.

TWO ACTIONS OF CONTRACT OR TORT. Writs dated June 9, 1927.

The actions were tried together in the Superior Court

before *Broadhurst*, J.   Material evidence is stated in the opinion. The judge excluded an advertisement by the American Telephone and Telegraph Company describing how a farm house was saved from destruction by fire by the use of the telephone. The advertisement bore a device on which were inscribed the words "Bell System" surrounded by a circle on which were inscribed the words: "American Telephone and Telegraph Company. And Associated Companies.". The plaintiff offered to show that the advertisement was paid for in part by funds derived from the New England Telephone and Telegraph Company and that the New England Telephone and Telegraph Company is a part of the Bell System and is one of the associated companies of the American Telephone and Telegraph Company.

The judge also excluded evidence of a conversation between Mary F. Mentzer and Mary E. Chase in which Mrs. Mentzer directed Mrs. Chase: "Go back into the house, call Central and get the Hudson Fire Department. State to Central that the Fire Warden approves it."

Special questions as follows were submitted to the jury:

"1. Did Moses Mentzer call the defendant's operator at Bolton and ask her to call the Hudson Fire Department?

"2. If Moses Mentzer did ask defendant's operator to call the Hudson Fire Department, did the operator unreasonably delay or altogether neglect to call that department at his request?

"3. If the jury answer "Yes" to both the foregoing questions, was such delay or neglect the proximate cause of any of the damage alleged to have been suffered by any plaintiff?

"4. If the jury answer "Yes" to all the foregoing questions, how much damage (as measured by money) was caused by such neglect or delay (a) to the plaintiff Francis C. Mentzer? (b) to the plaintiffs Moses H. Mentzer and Mary F. Mentzer?"

The jury answered the first three questions in the affirmative and stated certain sums as damages in answer to the fourth. The judge thereupon ordered a verdict for the

defendant in each action and reported the actions for determination by this court.

*C. E. Tupper,* (*F. W. Morrison* with him,) for the plaintiffs.

*M. F. Weston,* (*J. N. Clark* with him,) for the defendant.

RUGG, C.J. By these actions in contract or tort, compensation is sought for property damages by fire alleged to have resulted from failure of the defendant to perform its duty in respect to summoning the fire department of the town of Hudson. Certain questions submitted to the jury were answered in favor of the plaintiffs. Verdicts were directed for the defendant, and the cases reported on all the admissions and evidence material to the questions of law raised.

The jury could have found the following facts: The plaintiff Francis G. Mentzer was a subscriber of the defendant on its telephone exchange in the town of Bolton and at all times entitled for himself and members of his family to unlimited telephone exchange service and toll service, and had paid all charges therefor. The defendant maintained a telephone exchange in the town of Hudson. The fire department of Hudson was connected with the Hudson exchange. The defendant maintained service on both exchanges at the times here material. The house in Bolton, owned by one of the plaintiffs, occupied by all of them and located about four miles from Hudson, was found to be on fire about half past seven o'clock in the morning of April 27, 1925. Immediately upon its discovery the wife of the plaintiff Francis G. Mentzer went to the telephone in the house, called the operator of the Bolton exchange, gave her name, said the house was on fire and asked that a general fire alarm be put in. This meant a general alarm for the town of Bolton. There was no evidence of failure by the operator to heed this request but evidence tending to show compliance with it. No contention of liability is or rightly could be rested on this transaction. Shortly after that call, the plaintiff Moses H. Mentzer called the Bolton exchange and after identifying himself said to the operator, "my house is on fire; I want the Hudson Fire Department, as there is

ample time to save this house if they come now." The operator answered: "All right, I will call them." The operator did not call that department. The fire did not involve the part of the house where the telephone was located until twenty minutes after nine o'clock. Hudson adjoins Bolton and at the time of this fire maintained two complete fire fighting units ready for instant use, and its chief of fire department because of an arrangement between him and Moses H. Mentzer would have gone with fire apparatus at once to the Mentzer house if notified. About half past nine o'clock in the same forenoon a call was sent to the Hudson fire department which responded promptly and arrived at the fire within eight or ten minutes and saved the barn on the premises. A neighbor, Mrs. Chase, living about a quarter of a mile away, testified that once of her own volition and once at the request of one of the Mentzer family she tried to get connection with the Hudson fire department but was told by the operator of the defendant that she had no authority to call the Hudson fire department without permission from some official of Bolton. The Bolton fire department consisted of one small chemical. There was no evidence of any arrangement between town officers of Bolton and those of Hudson that the fire department of the latter town should answer calls or attempt to extinguish fires in the former town, although the chief of the fire department of Hudson testified that he had been to fires in Bolton on individual calls from citizens of that town and was ready to go at any time. The defendant advised its subscribers that when certain emergencies exist such as fire they may refrain from looking up the number of the party with whom they wish to be connected and instead give the operator the name and address and the nature of the emergency and the operator will undertake to make the connection without the subscriber giving the number. The defendant conceded this in substance and in addition that "sometimes the operator will call directly and pass the message on, as for instance — if you said, 'Emergency, police,' and when the operator got hold of the police department you might have been sandbagged at that time, when the operator would

pass the message on, an emergency call for police had come from such a number, and the form that takes in form of notice is this, if in any emergency you don't know the correct number, call the operator and say, 'Emergency, fire,' or 'Emergency, police,' and give your name and address to the person who takes your emergency call." The defendant conceded that there was sufficient evidence of damages to real and personal property of the plaintiffs. The jury could have found that the defendant's operator did not put through the call to the Hudson fire department when requested by the neighbor, or by any member of the Mentzer family, and that (as also was conceded by the defendant at the trial) her failure to call that fire department when requested to do so by Moses H. Mentzer was the proximate cause of the damages sustained by the plaintiffs "so far as it was within the province of the jury pursuant to instructions" from the court "to determine damages and the proximate cause."

The plaintiffs seek to fasten liability on the defendant for damages resulting from delay in calling the Hudson fire department. The failure of the operator of the defendant's Bolton exchange to make the requested calls and connections is the basis of that liability.

The defendant is a public service corporation engaged in the transmission of intelligence by electricity within the Commonwealth. Its position with reference to the public is of a nature in many respects peculiar to itself. It is not a common carrier under the common law because it is not entrusted with the custody of anything of intrinsic value. It resembles a telegraph company but is different. As matter of common knowledge it does not take possession of messages to be sent over its wires. It affords facilities whereby its subscribers or customers may themselves talk with others with whom they desire to be connected. The telephone company puts its instrument and mechanisms in the premises of its subscribers and engages to render service for a stated time for specified compensation. A telegraph company commonly makes a separate contract for each message accepted by it for transmission. The transmission of intelligence by electricity is a business of a public char-

acter, to be exercised under reasonable public regulation subject to the same general principles as govern transportation of goods or passengers by common carriers. G. L. c. 159, §§ 10–44, and especially § 12 (d). *Grinnell* v. *Western Union Telegraph Co.* 113 Mass. 299. *Pierce* v. *Drew,* 136 Mass. 75, 77. *Western Union Telegraph Co.* v. *Foster,* 224 Mass. 365, 372. *Public Service Commissioners* v. *New England Telephone & Telegraph Co.* 232 Mass. 465. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, 145–151. A telephone company within this Commonwealth as matter of common knowledge does not undertake to transmit messages for the general public or for its subscribers. Its business is to afford to its subscribers and others opportunity to hold conversation with others and to transmit their messages by their own voices through the instrumentalities and facilities afforded by it. It is no part of the ostensible authority of its ordinary agents to undertake to receive messages and by their own voices to transmit them to others.

No public regulations govern the situation disclosed on this record. The rights and liabilities of the respective parties depend wholly upon the arrangements, express or implied, made between them in the light of their positions with reference to each other and of the public duty of the defendant.

The telephonic conversation between the Bolton operator of the defendant and Moses H. Mentzer, according to the testimony of the latter, means that he asked her to transmit his message to the Hudson fire department and did not ask to be connected with that department in order that he might himself talk with the person who might answer that call. The case was tried and has been argued at the bar of this court by both parties on the theory that Moses H. Mentzer gave the message to the operator of the defendant on its Bolton exchange and expected her to transmit it. He did not wait to be connected himself with the Hudson fire department. The case will be treated as the parties have treated it. Other possible interpretations of the conversation therefore will be laid to one side,

It is to be observed that Moses H. Mentzer did not bring himself within the general scope of duty of the defendant. He did not ask to be connected with the Hudson fire department. No importance is attached to the circumstance that there was no direct connection between the Bolton telephone exchange and the Hudson telephone exchange and that calls between the two had to be routed through another exchange. It is the right of one standing in the relation of a subscriber to the defendant to receive from it toll service on request. It is no part of the right of a subscriber to cast upon the defendant the transmission of his message. He has a right to be connected so that he may deliver his own message. It is no part of the duty of the defendant in general to transmit messages given to it by subscribers.

The plaintiffs rest their case chiefly on the emergency service undertaken by the defendant for the benefit of its subscribers. The obligations assumed by the defendant in that respect have already been summarized. Moses H. Mentzer did not conform to the rules of the defendant governing its emergency service. In that regard the subscriber need not give the operator the number of the telephone desired but may state the emergency. Of course it was enough to bring him within the operation of the emergency service to say that the house was on fire, to give his name and to describe the location of the house. There was evidence that he did all these things. One in his position could not be expected to act with all the deliberation deemed wise after a review of the situation in cold blood. It would be enough to do what might be thought natural in the hurry and excitement of the moment when he was obliged to act. The duty of the defendant in those circumstances, as shown on this record, is not a general one to transmit the message; its duty is to make the connection and await the action of the person giving the call. A duty on the defendant to pass the message on arises only in the event that the person making the emergency call is not at his telephone when the connection is made. Moses H. Mentzer did not remain at his telephone to await the connection.

He undertook to charge the defendant with the obligation to transmit the message. He was under no exigency to leave the telephone before the connection was made. The telephone was accessible for more than an hour after his call. He did not try to make a second call. There is nothing in the evidence or in the concessions of the defendant as shown on the record which discloses a representation by the defendant that a subscriber can call the fire department by giving instructions or information to the operator and then hanging up. The evidence is that the defendant undertook to transmit an emergency message only in cases when it was impossible for the subscriber to remain at his telephone and deliver his own message.

There was testimony that the Bolton operator of the defendant in answer to the call of Moses H. Mentzer said that she would call the Hudson fire department. On this point the question is whether there was evidence to warrant a finding that she was authorized to bind the defendant by this agreement. There is no direct evidence of such authority. As already pointed out, it was not within the scope of her general authority in view of the public obligations of the defendant, and not within the scope of her duty with reference to emergency calls as shown by the record. There was no evidence of a custom to perform service of this nature. The statement of the operator that she would transmit the message was not evidence of authority conferred upon her by the defendant to that end. It was not within the scope of her real or apparent authority as the operator in charge of the Bolton exchange, on the evidence in this record, to undertake to transmit the message given to her by Moses H. Mentzer to the Hudson fire department by her own voice. The general principle governing this aspect of the case has been stated many times although no cases precisely in point so far as concerns the nature of the business have been discovered. *Brooks* v. *Shaw*, 197 Mass. 376, 380. *Hosher-Platt Co.* v. *Miller*, 238 Mass. 518, 523. *Seaboyer* v. *Director General of Railroads*, 244 Mass. 122, 124. *O'Leary* v. *Fash*, 245 Mass. 123. *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 11. *C. F.*

*Hovey Co., petitioner,* 254 Mass. 551, 555. *Hale* v. *Texas Co.* 264 Mass. 246.

If the operator in charge of the Bolton exchange of the defendant undertook the gratuitous act of transmitting the message for Moses H. Mentzer in response to her own humane impulses or neighborly good will, that would not render the defendant responsible. *Griswold* v. *Boston & Maine Railroad,* 183 Mass. 434, 437. Doubtless the defendant might promise that its operators would receive and deliver messages in emergencies such as are here disclosed, but no such promise could rightly be found upon anything in this record.

The testimony touching the call by the neighbor Mrs. Chase was that she put in a call with the defendant's operator for the Hudson fire department, at the same time telling her that the Mentzer house was on fire, and the operator refused to give her the connection because she had no authority to call the Hudson fire department and must first get the sanction of the fire warden of Bolton. Shortly thereafter she again tried to get the connection telling the operator that one of the Mentzer family stated that the fire warden had authorized the call and the operator said then that permission must be procured from the selectmen. The refusal to make the connections called for by Mrs. Chase was a breach of the duty owed to her by the defendant. The undertaking of the defendant toward her was to complete all her calls to other subscribers whether in Bolton or Hudson so far as reasonably practicable. There is no evidence that the defendant had been advised not to complete the calls requested without the consent or approval of town officials. That was primarily a private duty owed by the defendant to Mrs. Chase arising out of their contractual relations. Breach of that duty affords no cause of action to a third person. That was decided in the leading and somewhat early case of *Winterbottom* v. *Wright,* 10 M. & W. 109. It is the law of this Commonwealth as is explained with ample reasoning and citation of authorities in *Thomas* v. *Lane,* 221 Mass. 447. That ground need not be traversed again. See also *Christensen* v. *Bremer,* 263

Mass. 129, 136–137; *Giberti* v. *James Barrett Manuf. Co.* 266 Mass. 70, 73.

There is no sound ground for a contention that the breach of the duty owed by the defendant to Mrs. Chase gives rise to a cause of action by the plaintiffs founded on the public nature of the defendant's business and undertakings. The reasonable expectation of the parties growing out of the installation of a telephone in the house of Mrs. Chase was that the defendant would afford its service to her and to members of her household.   There is no basis in this record for any understanding that the telephone was deemed to be for the protection of the neighborhood with the consequent liabilities on the part of the defendant to all neighbors, or that the defendant was reasonably bound to expect any such duty owed by it.   *Standard Iron Works* v. *Southern Bell Telephone & Telegraph Co.* 256 Fed. Rep. 548. *Knesek* v. *Crown Point Telephone Co.* 82 Ind. App. 603. *Inman* v. *Home Telephone & Telegraph Co.* 105 Wash. 234. Cases like *Wells* v. *Western Union Telegraph Co.* 144 Iowa, 605, *Western Union Telegraph Co.* v. *Morrison,* (Tex. Civ. App.) 33 S. W. 1025, and *Telegraph Co.* v. *Mellon,* 96 Tenn. 66, rest upon different grounds and it is not necessary to consider whether the principle there adopted prevails in this Commonwealth.

There was no breach of any public or private duty owed by the defendant to the plaintiffs in the failure of the operator to convey the message to the Hudson fire department. Such a service is different from that which the defendant professes to render in the transmission of intelligence whether on the facts of this record or as matter of common knowledge. Telephone companies "cannot be required to furnish a service which they do not hold themselves out as undertaking to furnish."   *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, 146.   The record does not disclose any obligation imposed by public authority requiring a telephone operator to transmit or relay emergency messages in the circumstances here disclosed.

Numerous cases have arisen in other jurisdictions where efforts generally unsuccessful have been made to hold tele-

phone companies liable for damages arising under circumstances more or less similar to those of the case at bar. In all of them the facts were sufficiently different to render unnecessary a review of them in detail. We think that there is nothing in the points decided in any of them at variance with the conclusions here reached. *Bess* v. *Citizens Telephone Co.* 315 Mo. 1056. *Southwestern Telegraph & Telephone Co.* v. *Gotcher*, 93 Texas, 114. *Volquardsen* v. *Iowa Telephone Co.* 148 Iowa, 77. *Southern Bell Telephone & Telegraph Co.* v. *Reynolds*, 139 Ga. 385. *Barrett* v. *New England Telephone & Telegraph Co.* 80 N. H. 354. *Forgey* v. *Macon Telephone Co.* 291 Mo. 539. *Lebanon, Louisville & Lexington Telephone Co.* v. *Lanham Lumber Co.* 131 Ky. 718. *Providence Washington Ins. Co.* v. *Iowa Telephone Co.* 172 Iowa, 597. *Southwestern Telegraph & Telephone Co.* v. *Thomas*, (Tex. Civ. App.) 185 S. W. 396. *Whitehead* v. *Carolina Telephone & Telegraph Co.* 190 N. C. 197. *Cody* v. *New York Telephone Co.* 3 N. J. Misc. 1176.

The result is that in our opinion the plaintiffs fail to establish any liability to them on the part of the defendant either in contract or in tort.

There was no error in the rulings excluding evidence. The advertisement of the American Telephone & Telegraph Company was immaterial to any issue here involved. It was not issued by or under the authority of the defendant and it did not represent to the public that its operators would receive and deliver messages to the fire department. The series of telephone bills to one of the plaintiffs had no pertinency. There was no contention that the subscriber was not entitled to the service required of the defendant by the law or its contract. The conversation between Mrs. Chase, the neighbor, and a member of the Mentzer family was excluded rightly. The obligations of the defendant could not be affected thereby. Every contention made in behalf of the plaintiffs has been considered, but no further discussion is required. In each case let the entry be

*Judgment on the verdict for the defendant.*