ARTHUR ABRESCH v. NORTHWESTERN BELL TELEPHONE COMPANY.[1]

February 24, 1956.

No. 36,735.

[1]Reported in 75 N. W. (2d) 206.

Briggs, Gilbert, Morton, Kyle & Macartney, Frank J. Hammond, and John E. Harrigan, for appellant.

Neumeier, Rheinberger & Eckberg, Adrian C. Cassidy, and Warren G. Austin, for respondent.

Gordon Rosenmeier, for Minnesota Telephone Association, Inc., amicus curiae.

KNUTSON, JUSTICE.

Appeal from a judgment entered pursuant to an order of the court granting defendant's motion for summary judgment.

This action was commenced to recover damages suffered by plaintiff in a fire in which his building was destroyed. A pretrial deposition of plaintiff was taken, and the following facts appear from the pleadings and such deposition.

Plaintiff owned and operated a business, specializing in cleaning and reconditioning barrels and drums, in a large one-story frame building located in Washington County in this state. Defendant furnished plaintiff with telephone service, one telephone being located in his home, which was about 300 feet from his place of business,

with an extension installed in his business building. Both were dial telephones.

On July 27, 1954, at about 3:45 p. m., a fire started inside plaintiff's business building. His attention was called to the fire, and he immediately went to the telephone and dialed "O" and heard someone say "Number, please." He thereupon requested the operator to call the North St. Paul and East County Line Fire Departments, giving the operator the location of his place of business. He then left the telephone to assist in fighting the fire. A short time later, when he became aware of the fact that the fire departments were not coming, he requested his wife to contact the fire departments by telephone from his home. He contends that the telephone then was out of order and that he could not contact the fire departments for about 20 minutes. In the meantime one of the fire departments had been contacted by a neighbor. By the time the fire departments arrived the fire was out of control, and the entire building was destroyed.

Plaintiff alleges in his complaint:

"V

"That defendant through its agents and servants negligently and carelessly failed to transmit said message described in Paragraph IV hereof, and negligently and carelessly caused plaintiff's telephone connections to be out of service and delayed for more than thirty minutes, and that defendant was otherwise negligent in failing and neglecting to furnish plaintiff with proper telephone service; and that as the result thereof, said fire department was delayed more than thirty minutes in getting to plaintiff's place of business.

"VI

"That solely and proximately by reason of the delay of thirty minutes, plaintiff's building and the contents thereof were completely destroyed by fire and plaintiff's business ceased to operate as a business."

Defendant denied liability and as affirmative defense:

"III

"Alleges that pursuant to the provisions of Section 237.07, Minnesota Statutes 1953, defendant has filed with the Railroad and

Warehouse Commission of the State of Minnesota a schedule of its exchange rates, tolls and charges for every kind of service, together with all rules, regulations and classifications used by it in the conduct of the telephone business, all of which have been approved by said Commission and kept in its files subject to public inspection; and that defendant has kept open for public inspection at designated offices such schedules and regulations.

"IV

"Alleges that among the regulations which have been on file with said Commission and available for public inspection at defendant's offices is the following regulation, which has been in force and effect for many years, to-wit:

" 'Transmission of Messages—The function of the Telephone Company is to furnish means of communication between telephone stations. Acceptance, by employes of written or verbal communications from the public, for transmission or delivery, is forbidden.' "

Defendant alleges also that the following rule and regulation is so filed:

"Allowance for Failure of Service—The Telephone Company does not guarantee uninterrupted working of its lines or equipment. In case service is interrupted otherwise than by the negligence or willful act of the subscriber, an adjustment will be made in the amount of charges for such of the service, equipment, and facilities furnished as are rendered useless or inoperative. Any adjustment shall apply only if the interruption continues beyond twenty-four (24) hours after first noted by the Telephone Company. No other liability shall in any case attach to the Telephone Company."

After the pretrial deposition of plaintiff was taken by defendant, a motion was made for summary judgment, which was granted by the trial court. The court was of the opinion that the rights of plaintiff are based on contract and that no tort action could be maintained. This appeal is from the judgment. The question presented for our determination is whether plaintiff, under the circumstances, can maintain a tort action to recover his damages.

■ While defendant contends here that plaintiff is also barred from recovery because the damages are so remote that they could not constitute proximate cause, the court was of the opinion that the question of proximate cause and contributory negligence should not be disposed of on this motion for summary judgment. With this we agree. The result is that the motion was disposed of and should be considered as a motion for judgment on the pleadings under Rule 12.03 of Rules of Civil Procedure.[2]

■ Much of defendant's brief is devoted to the argument that the damages suffered by plaintiff are so remote and speculative that as a matter of law they could not be a proximate cause. There are cases so holding, but most of these cases have arisen after trial.[3] However, proximate cause usually is a question of fact. It seldom can be disposed of on a motion for summary judgment. We are not unmindful of the many difficulties confronting plaintiff in proving that defendant's negligence, if any, constitutes proximate cause. It can hardly be said, however, that it cannot be proved in any case. Much the same questions arise in suits for damages where a railway company negligently interferes with the fire department, and yet cases of that kind in which recovery has been upheld are numerous.[4] Inasmuch as the trial court was of the opinion that the questions of proximate cause and contributory negligence should not be disposed of on this motion for a summary judgment, it follows that the court's decision was not based on a determination of those questions, so they probably are not before us. Even if they are, on the record before us we are convinced that the court was right in holding that they should not be determined on a motion for summary judgment.

[2]See, Dunn v. J. P. Stevens & Co. Inc. (2 Cir.) 192 F. (2d) 854.

[3]Cases involving liability of telephone companies for interruption or failure of service are collected in Annotations, 23 A. L. R. 952 and 78 A. L. R. 661; 45 Harv. L. Rev. 393; 80 U. of Pa. L. Rev. 316; 33 Minn. L. Rev. 191. Many of the cases are discussed in Foss v. Pacific T. & T. Co. 26 Wash. (2d) 92, 173 P. (2d) 144.

[4]Erickson v. G. N. Ry. Co. 117 Minn. 348, 135 N. W. 1129, 39 L.R.A. (N.S.) 237, Ann. Cas. 1913D, 763, 3 NCCA 490; Bodkin v. G. N. Ry. Co. 124 Minn. 219, 144 N. W. 937, Ann. Cas. 1915B, 705; Annotation, 5 A. L. R. 1651.

■ Defendant contends, and the trial court held, that the rights of the parties rest on contract; hence, that the rule of Hadley v. Baxendale, 9 Ex. 341, governs as to the measure of damages and a tort action will not lie. We have applied that rule to actions against a telegraph company[5] in spite of M. S. A. 237.41 and 237.44.[6] While there is a similarity between telegraph and telephone companies in the type of service rendered, there is also a difference in that each message transmitted by a telegraph company involves a separate contract and this contract involves an undertaking to deliver the message, whereas a telephone company usually contracts only to furnish a mechanical connection between two parties so as to permit them to converse with each other and, ordinarily, does not undertake to deliver a message. That is particularly true in these modern times where telephones have been mechanized and the whole contact between the parties is mechanically handled without the act of any human agency. For that reason, there is even greater reason for limiting the right of the parties using a telephone strictly to those matters which are involved in the contract.

■ Rules and regulations filed under M. S. A. 237.07,[7] assuming

[5]Francis v. Western Union Tel. Co. 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406.

[6]§ 237.41. "Persons and corporations engaged in the business of transmitting messages by telegraph lines are common carriers, and as such shall serve all persons, without discrimination or preference, for reasonable compensation; and every contract, notice, or condition stipulating for exemption from liability for the consequences of their neglect shall be void."

§ 237.44. "If any person or corporation owning or operating a telegraph line wholly or partly within the state shall fail to transmit any message within a reasonable time, or to exercise due diligence to that end, after its reception, or shall fail to deliver any message to the party to whom it is addressed within a reasonable time after its arrival at the place of destination, he or it shall be liable in a civil action at the suit of the party injured for all damages sustained by reason of such neglect or omission. The company delivering the message shall state plainly thereon the exact time when it was received at the original point for transmission."

[7]M. S. A. 237.07. "It shall be the duty of every telephone company to file with the commission a schedule of its exchange rates, tolls, and charges for every kind of service, together with all rules, regulations, and classifica-

that they are reasonable, become part of the contract between the parties,[8] and, as long as they operate within the contract, their rights are to be determined by the rules applicable to contract law.

■  It might seem that the above conclusions should dispose of this case, but there is still another contention of plaintiff which requires consideration. Plaintiff contends that, in spite of its rules and regulations, defendant has held itself out to the public as willing to convey messages in case of certain emergencies such as a fire. The question then arises, assuming such fact can be proved, is defendant liable in a tort action for a negligent failure to perform such promise? We think that this question must be answered in the affirmative. The rule with respect to such liability is stated in Restatement, Torts, § 325, as follows:

"One who gratuitously undertakes with another to do an act or to render services which he should recognize as necessary to the other's bodily safety and thereby leads the other in reasonable reliance upon the performance of such undertaking

"(a)  to refrain from himself taking the necessary steps to secure his safety or from securing the then available protective action by third persons, or

"(b)  to enter upon a course of conduct which is dangerous unless the undertaking is carried out,

"is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking."

---

tions used by it in the conduct of the telephone business, all of which shall be kept on file by the commission subject to public inspection. The commission shall require each telephone company to keep open for public inspection at designated offices, so much of these schedules and regulations as it deems necessary for the public information."

[8]Western Union Tel. Co. v. Esteve Bros. & Co. 256 U. S. 566, 41 S. Ct. 584, 65 L. ed. 1094; cf. Lind v. Western Union Tel. Co. 173 Minn. 424, 217 N. W. 486.

While this section deals specifically with bodily injury, it applies as well to property damage.[9]

Restatement, Torts, § 497, reads:

"The rules which determine the negligence of conduct threatening harm to another's interest in the physical condition of land and chattels are the same as those which determine the negligence of conduct which threatens bodily harm."

Restatement, Agency, § 378, states the rules as follows:

"One who, by a gratuitous promise or other conduct which he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent, causes the other to refrain from having such acts done by other available means is subject to a duty to use care to perform such service or, while other means are available, to give notice that he will not perform."

The case of Mentzer v. New England T. & T. Co. 276 Mass. 478, 177 N. E. 549, 78 A. L. R. 654, relied upon by both parties, probably is the only one in which a so-called emergency service has been judicially considered by a court.[10] The facts in that case are distinguishable from those now before us. The court there said (276 Mass. 485, 177 N. E. 551, 78 A. L. R. 658):

"It is to be observed that Moses H. Mentzer did not bring himself within the general scope of duty of the defendant. He did not ask to be connected with the Hudson fire department. * * * It is the right of one standing in the relation of a subscriber to the defendant to receive from it toll service on request. It is no part of the right of a subscriber to cast upon the defendant the transmission of his message. He has a right to be connected so that he may deliver his own

[9]See discussion of Professor Bohlen, 11 A. L. I., Proceedings, p. 585. Section 325 was then § 303, and it was § 198 in the tentative draft No. 4 of the Restatement. See, for instance, Prosser, Torts (2 ed.) § 38. The rule is recognized in notes found in 45 Harv. L. Rev. 393; 80 U. of Pa. L. Rev. 316; see, also, 11 Boston U. L. Rev. 600; Annotation, 78 A. L. R. 670.

[10]See, Annotation, 78 A. L. R. 670.

message. It is no part of the duty of the defendant in general to transmit messages given to it by subscribers.

"The plaintiffs rest their case chiefly on the emergency service undertaken by the defendant for the benefit of its subscribers. The obligations assumed by the defendant in that respect have already been summarized. Moses H. Mentzer did not conform to the rules of the defendant governing its emergency service."

The court then said (276 Mass. 487, 177 N. E. 552, 78 A. L. R. 660) :

"* * * Doubtless the defendant might promise that its operators would receive and deliver messages in emergencies such as are here disclosed, but no such promise could rightly be found upon anything in this record.

\* \* \* \* \*

"* * * Telephone companies 'cannot be required to furnish a service which they do not hold themselves out as undertaking to furnish.' * * * The record does not disclose any obligation imposed by public authority requiring a telephone operator to transmit or relay emergency messages in the circumstances here disclosed."

In this limited area, therefore, it should follow that, while the telephone company is under no duty to assume the responsibility of delivering messages in cases of emergency, if it does voluntarily assume such responsibility and thereby leads others to rely on such assumption of duty and to refrain from taking other and more direct action to protect themselves, the company is required to exercise reasonable care in performing the duty so assumed for a failure of which it may become liable in a tort action. Whether there was such assumption of responsibility and whether defendant failed to exercise reasonable care in the performance thereof involve questions of fact which cannot be determined on a motion for summary judgment.[11]

Reversed.

---

[11]While somewhat distinguishable because of the existence of a statute which we do not have, the cases of Boldig v. Urban Tel. Co. 224 Wis. 93, 271 N. W. 88, and Christenson & Arndt, Inc. v. Wisconsin Tel. Co. 264 Wis. 238, 58 N. W. (2d) 682, are of interest here.