BOSTON CONSOLIDATED GAS COMPANY *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    October 4, 1950. — February 28, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Gas Company.  Public Utilities.  Equity Jurisdiction,* Public utilities. *Equity Pleading and Practice,* Master: report of evidence, recommittal, exceptions to report; Review of order of department of public utilities. *Evidence,* Compilation of facts and statistics, Relevancy and materiality.

A party to a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, for review of an order of the department of public utilities has no more right to a report of all the evidence heard by a master than has a party in any suit in equity.

A denial of a motion to recommit to a master should not be disturbed where the validity of the alleged grounds for recommittal was not sufficiently made to appear by the moving party.

Exceptions to a master's report addressed to his making of findings or refusal to make findings are of no avail in the absence of a report of the evidence.

In a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, for review of an order of the department of public utilities as to rates of a gas company, no error appeared in a master's report respecting items included by him in capital investment for rate making purposes, or the manner in which he dealt with surplus and working capital, or certain findings as to the sale of a building and application of part of the proceeds to the payment of short term notes, or his use of evidence of certain book values, or his use of "observed depreciation" in connection with reproduction costs, or the admission in evidence of a book meeting the requirements of G. L. (Ter. Ed.) c. 233, § 79B, inserted by St. 1947, c. 385, § 1, or his dealing with a certain "fuel charge," or the exclusion of certain evidence of the company's earnings and other data on the ground that it was remote.

In a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, involving the rates of a gas company for gas, it was held to be improper for the company, while generally treating its business of selling gas appliances as separate from its business of selling gas and not crediting the profits of the appliance business to the gas business, to charge to the gas business the salaries and commissions of salesmen of gas appliances, the cost of the clerical work of the appliance business and the expense of advertising the appliances, even though the sale of appliances promoted

the sale of gas; it was held not improper for the company to charge to the gas business the expense of sending men to customers in response to complaints of leaks, faulty operation of appliances and similar difficulties.

The burden resting on a gas company of proving in a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, that rates fixed by the department of public utilities were confiscatory, as alleged by the company, was not sustained where a master's report showed that certain items had been improperly included in the operating expenses of the company, but did not show the amounts of such items or that, if such items were omitted, the net earnings on the basis of the rates fixed. by the department would be left below the line of confiscation; and the case was ordered recommitted to the master for further findings in that respect.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 10, 1948.

The suit was reserved and reported by *Counihan,* J.

*R. H. Holt,* (*J. P. Rooney & A. P. Schmidt* with him,) for the plaintiff.

*D. H. Stuart,* Assistant Attorney General, (*F. J. Roche,* Assistant Attorney General, with him,) for the defendant.

QUA, C.J.   This is a bill in equity under G. L. (Ter. Ed.) c. 25, § 5,[1] alleging that an order of the department entered September 28, 1948, in a proceeding known as D. P. U. 7966, whereby the department disallowed a schedule of rates for gas to be sold to the public which the company had filed on November 14, 1947, and permitted the company to file new and lower rates, was confiscatory and unconstitutional. The rates filed by the company have been called the proposed rates, and those allowed by the department have been called the permitted rates.

Upon making the claim of confiscation the company became entitled to a determination of that issue by this court upon its own independent judgment as to both law and facts and upon evidence not confined to that introduced before the department. *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 86–89, and cases cited. The rights of the company in this respect have been fully recog-

---

[1] This section provides, among other things, that this court "shall have jurisdiction in equity to review, modify, amend or annul any ruling or order of the commission [department] . . . but only to the extent of the unlawfulness of such ruling or order."

nized and have been accorded to it through the appointment of a master by this court, subject to its control, a hearing before him, at which evidence other than that introduced before the department was received, his report and supplementary report, and the action of this court taken and to be taken thereon — all in accordance with the usual course of judicial proceedings in suits in equity. The right of judicial review is obviously a right of the company and not of the department. The company makes no complaint as to the manner in which its right has been preserved to it. The department has attempted to object on the ground that the master was not ordered to report all the evidence. If the department has duly saved the point, which seems doubtful, we think it had no more right to have all the evidence reported by the master than any other litigant would have in any suit in equity. The reference was in the form held proper in *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 89. The master has reported the decision of the department in full, and that is before us for any appropriate use. See *Donham* v. *Public Service Commissioners,* 232 Mass. 309, 328. We do not understand the case of *Knoxville* v. *Knoxville Water Co.* 212 U. S. 1, 8, as laying down any absolute rule that all the evidence heard by a master must be reported to the court of last resort, especially in a case where that court itself appoints the master and has complete control over him and can judge from his report and the nature and detail of his subsidiary findings viewed in connection with the issues whether a report of a part or of the whole of the evidence is necessary to the ends of justice. In this instance single justices have repeatedly refused to order the entire evidence reported, and we now upon study of the master's report and the detailed subsidiary findings contained in it, are unable to see how we could be assisted if we had the evidence before us. The statute provides for a bill in equity. That seems to imply that, in general, usual equity procedures are to be followed.

The cause is now before the full court by reservation and

report of a single justice upon the pleadings, the master's reports, the department's exceptions, the company's motions to confirm the master's report, and other documents which need not now be enumerated "for determination by the full court of all questions of law and fact appearing on the record, such orders and decrees to be entered as justice and equity may require."

There was no error of law in denying the department's motion to recommit in so far as it was denied.[1] Many of the so called "reasons" for recommittal were in reality in the nature of additional exceptions and could not be filed without a special order of the court. Equity Rule 26 (252 Mass. 608). *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 91. Many others rest upon contentions that the master made certain findings not warranted by the evidence or that on the evidence he should have made certain other findings, and request reports of relevant portions of the evidence. Recommittal commonly will not be ordered on such grounds as these unless it is made to appear by affidavit or otherwise that the evidence before the master was at least such as to make it probable that his findings or failures to find were erroneous. *Morin* v. *Clark*, 296 Mass. 479, 483–484. *Minot* v. *Minot*, 319 Mass. 253, 260. See Common Law Rule 11 (252 Mass. 592). There is at the end of the department's motion a statement under oath, as to the requests for additional findings, that all are "based on testimony," but what the testimony was does not appear. This was plainly insufficient. So are certain statements in the body of the motion that the evidence was "conclusive." In ground 2 the department sought recommittal because, as we understand it, the master admitted before him certain evidence which the department had requested the company to furnish to the department after the close of the public hearing, which evidence related to the company's

---

[1] For the sake of completeness and because of the arguments on both sides we have thought it proper to discuss this motion although, so far as appears, no appeal was taken from the action of the judge, and there is no report by the judge who acted upon the motion. See *John Gilbert, Jr. Co.* v. *C. M. Fauci Co.* 309 Mass. 271.

operations subsequent to the hearing and was considered by the department. It would seem that this evidence would be competent in this proceeding between the company and the department. Exactly what this evidence was does not appear. At any rate, no error has been shown in the refusal to recommit on this ground. It is unnecessary to state other reasons for the refusal to recommit.

Most of the department's many exceptions to the master's first report[1] may be disposed of on the ground that they are addressed to the making of findings or to the refusal to make findings and are of no avail when the evidence is not reported. It seems unnecessary to cite authority for this familiar proposition. Other exceptions relate to immaterial matters, and still others are so plainly without merit that discussion of them would be superfluous. Some have not been argued.

The master rightly included in the capital investment of the company for rate making purposes the premium on the capital stock, debt capital represented by long and short term notes, and reinvested surplus. The report must be construed as showing that all these items represented investment devoted to the public service. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* *ante,* 81, 96. See *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 96–97. There is no duplication in the way in which the master dealt with surplus and working capital, even though both may have been derived from past earnings not paid out as dividends. Both are not included in the same tabulation. Each is used in its proper place in one of two different methods of arriving at a rate base.

There was at least no material error in the master's finding that the sale of a large office building and the application of part of the proceeds to the payment of short term notes issued to raise funds for the payment of taxes "did not reduce the capital of the company." The sale itself merely converted a capital asset into cash, and in so far as short

---

[1] There were no exceptions to the master's supplementary report, and no motion to recommit was filed with respect thereto.

term notes entered into the master's findings as to capital, the notes paid as the result of this transaction were not included after their payment.

There was no error of law in the master's use of the evidence of book values to find the amount to be deducted from the company's total investment on account of its electric business, which is not involved in this suit.

There was no error in the use of "observed depreciation" in connection with reproduction costs (*Attorney General v. Trustees of Boston Elevated Railway*, 319 Mass. 642, 671, and cases cited; *Pacific Gas & Electric Co. v. San Francisco*, 265 U. S. 403, 406), or in admitting in the same connection the book called "Handy's Indices," since the master finds that the book met the requirements of G. L. (Ter. Ed.) c. 233, § 79B, as inserted by St. 1947, c. 385, § 1.

The master dealt rightly with the fuel charge, which was the subject of litigation in *Boston Consolidated Gas Co. v. Department of Public Utilities*, 321 Mass. 259, by treating it as a part of the price received by the company for its gas and including in production expense the amount actually paid by the company for the gas which it bought for resale and for fuel which it used in making gas. This was strictly in accord with the factual situation.

We cannot find error of law in the master's exclusion of statements offered by the department showing net earnings and other data for the entire period from 1940 to 1948. The master says that he deemed this evidence too remote from the issues "in that it would require an inquiry into the business of the company for a period of ten years prior to the filing of the permitted and the proposed rates." The offered statements are not before us. The master may well have thought such statements needlessly remote from the time within which the new rates were to operate and likely to lead to collateral issues.

The department's thirty-fifth exception to the master's first report complains of the allowance by the master of certain expenses connected with the sale of gas appliances as expenses of the gas business, thereby reducing the net

earnings of that business. The master found that the company maintains a division for the sale of appliances which is "kept separate from the gas division"; that the company makes a charge in the nature of rent to this division and does not include the original cost of appliances sold in the expenses of the gas division or credit the profits to that division; that under present conditions gas used for lighting, other than street lighting, is negligible; that its use is chiefly in heating, cooking, refrigeration, and for similar purposes; that the company employs salesmen to sell appliances and thus to promote the use of gas and charges their salaries and such commissions as are paid to them to the gas division under the heading of "New Business"; that bills for appliances sold and the credits thereon are handled by the same clerical force that handles the bills for gas sold; that the cost of this force is charged to "commercial expenses" of the gas business; that it is apparently not practicable to segregate this cost of clerical help between the two divisions; that the company charges the expenses of advertising the appliances to the expense of new business in its gas division; that the method of charging these various expenses was adopted in good faith; that the inference that they relate to the promotion of gas sales is a reasonable one; "that the item of new business in the list of expenses represents sums actually expended in acquiring new business in the manner stated"; that the company employs men to visit the premises of gas customers in response to complaints of leaks, faulty operation of appliances, and similar difficulties, the first half hour of such service being furnished free; that the company deems it important to the sale of gas that its service be operated satisfactorily and safely, and in good faith charges the expenses of this work to its gas business under the item "utilization."

We have no difficulty in agreeing that the expense of sending men to customers in response to complaints of leaks, of the faulty operation of appliances, whether purchased of the company or elsewhere, and of similar difficulties is a proper charge to the operating expenses of the gas business.

But the cost of appliance salesmen, of clerical work of the appliance business, and the cost of advertising appliances for sale seem to us to stand on a different footing. The company argues with force, in substance, that gas cannot be bought by the consumer like ordinary merchandise but can be bought only by having it flow through appliances of one kind or another; that apart from these appliances it cannot be advertised effectively; and that whatever promotes the flow of gas through appliances promotes the sale of gas. But the difficulty with the argument seems to us to be that either it falls short of proving the point or it proves too much. If the appliance business is really a part of the gas business, the gas customers are entitled to have the profits from appliances included in the earnings of the gas business. If it is really a separate business its expenses ought not to be charged against the gas customers. In *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, at page 99, we said, "The sale and servicing of gas appliances constitute a separate business from the supplying of gas . . . [citations]. It would not be fair, on the one hand, to charge all customers with higher rates so that some might buy appliances and have them serviced at less than cost, or, on the other hand, to lower the cost of gas service because of a profit on those items." See *MacRae* v. *Selectmen of Concord*, 296 Mass. 394, 398. In the present case the company treats the appliance business for most purposes as a separate business. It cannot consistently treat it as a part of the gas business for the purpose of the expenses here in question. Except for the *Lowell* case just referred to, no decisions of courts squarely in point have been brought to our attention, and we have found only one (cited in the footnote), but a great many decisions of regulatory boards are in accord with the position we take.[1]

[1] *Re Accounting for Gas Companies*, P. U. R. 1931B, 436. *Public Utilities Commission* v. *Bangor Hydro-Electric Co.* 15 P. U. R. (N. S.) 49, 61. *Re Community Natural Gas Co.* 15 P. U. R. (N. S.) 149, 165. *Groggins* v. *New York Edison Co. Inc.* 16 P. U. R. (N. S.) 365, 373. *Lone Star Gas Co.* v. *Fort Worth*, 20 P. U. R. (N. S.) 89, 119. *Re Rates & Rate Structures*, 29 P. U. R. (N. S.) 391, 460, 471. *Re Mountain Fuel Supply Co.* 33 P. U. R. (N. S.) 3, 22. *Re Queens Borough Gas & Electric Co.* 39 P. U. R. (N. S.) 65, 76–77. *Re*

There is nothing in the master's report which will enable us to say with sufficient assurance that the disputed expenses might not affect the result of the case. The amounts of such expenses do not appear. In 1948 the appliance business amounted to $2,000,000. In eight months of 1949 it amounted to $848,158.57. The cost of salesmen, clerical help, and advertising might well have amounted to a very considerable proportion of these figures, and if not added to the operating expenses of the gas business might leave net earnings from that business above the line of confiscation. In this connection it is important to note that although the master finds that in order that the company may operate successfully, maintain its financial integrity, attract capital, and compensate its investors properly for the risks involved it is necessary for it to earn an amount available for interest and dividends equivalent to not less than 6.25% on a fair value of $45,000,000, the rates proposed by the company itself would fall far short of producing such earnings and would produce on an annual basis only approximately $400,000 more than the rates permitted by the department. For aught we know the expenses of the appliance business improperly charged to the gas business might have been enough to wipe out this difference. If it should so prove, the earnings of the company under the rates permitted by the department would be as great as the earnings under the rates which the company itself proposed, which must be deemed to have assumed a continuance of the company's method of charging

*Washington Gas Light Co.* 46 P. U. R. (N. S.) 1, 6–7. *Customers* v. *New York & Richmond Gas Co.* 48 P. U. R. (N. S.) 25, 37, 46–49. *Re Pittsfield Coal Gas Co.* 68 P. U. R. (N. S.) 87, 89–91. *Re Kings County Lighting Co.* 70 P. U. R. (N. S.) 374, 408. *Re Washington Gas Light Co.* 83 P. U. R. (N. S.) 4, 16–19.
    The few decisions to the contrary which we have seen appear for the most part to go on the ground that the amounts involved were small and that *both* profits and expenses could be charged to the utility business. *Honolulu Gas Co. Ltd.* v. *Public Utilities Commission,* 33 Hawaii, 487, 516–518. *Borough of Wyoming* v. *Luzerne County Gas & Electric Co.* P. U. R. 1922A, 48, 55–56. *Re Central Arizona Light & Power Co.* 9 P. U. R. (N. S.) 270, 277. *Re Hawaiian Electric Co. Ltd.* 33 P. U. R. (N. S.) 161, 173. *Re Vallejo Electric Light & Power Co.* 55 P. U. R. (N. S.) 435, 451. But see *Lewiston Gas Light Co.* v. *Itself,* 72 P. U. R. (N. S.) 145, 147. For further discussion see Mosher & Crawford, Public Utility Regulation, 139–143; "When a Utility Company Merchandises" by Francis X. Welch, 7 Public Utilities Fortnightly, 67, 73–78.

expenses of the appliance business to the gas business, and in that event we do not see how the company could successfully contend that the permitted rates were confiscatory. See *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 326. We are aware that when the company determined upon its proposed rates it may have expected that it would be allowed to charge the disputed expenses against gas income, but we think nevertheless that it must submit to having its earnings determined by correct legal standards. The burden of proof was upon the company to show that the order of the department was confiscatory. G. L. (Ter. Ed.) c. 25, § 5. We think that burden has not been sustained as long as the amount of wrongly charged expenses remains unknown. The case must be recommitted for further findings on this point. We are not satisfied that the finding of the master that "It is apparently not practicable" to segregate the payments for clerical help between the appliance business and the gas business shows that further effort as to these items would be useless. It would seem probable that persons familiar with the work done and the manner of doing it could give informed estimates of the time spent on the different kinds of work so as to permit a finding of at least a minimum sum properly chargeable to the gas business within such limits of accuracy as the law is accustomed to accept in deciding other difficult issues of fact, the burden of proof being always upon the company to show how great a sum should be charged.

It follows that the department's thirty-fifth exception to the master's first report must be sustained and all other exceptions must be overruled.

The result of this opinion is that an interlocutory decree is to be entered sustaining the department's thirty-fifth exception to the master's first report, confirming that report except as affected by the sustaining of that exception, confirming the master's second report, and recommitting the cause to the master to report further the amount of expenses for salesmen, clerk hire, and advertising properly allocable to the gas business and to the appliance business,

and also whether any significant portion of the company's invested capital has been withdrawn from the service of the public in the gas business for purposes of the appliance business, and if so, how much, and what changes in the figures contained in the master's first report should be made in consequence of this opinion.

*So ordered.*