## Opinion of the Justices to the House of Representatives.

*Public Utilities. Constitutional Law, Due process of law, Public utilities. Equity Jurisdiction, Public Utilities. Equity Pleading and Practice, Review of order of department of public utilities.*

Review and discussion of decisions respecting constitutional requirements for judicial review in public utility rate cases.

The General Court may constitutionally enact legislation providing that in cases arising under G. L. (Ter. Ed.) c. 25, § 5, the Supreme Judicial Court cannot hear any evidence, except that, in order to afford the complete review of law and fact which is constitutionally necessary in cases where issues of confiscation or other violation of constitutional rights are involved, such legislation must leave in the court, in such cases, full authority, by remanding the case to the public utilities commission or otherwise, to require the commission to hear and report all pertinent evidence, including new evidence necessary to bring the proof as nearly as reasonably possible down to the date of final decision.

A statute depriving a public utility of an opportunity to obtain a judicial determination of the facts in cases involving questions of confiscation or other violation of constitutional rights through action of the department of public utilities would be unconstitutional.

On April 30, 1952, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on March 20, 1952, and transmitted to the Justices on March 27. A copy of the order is attached hereto, together with a copy of that portion of the annual report of the department of public utilities for the year 1951 which contains drafts for legislative action and is known as House No. 85, and a copy of a pending bill printed as House No. 86, both of which were transmitted to us with the order.

The questions are these:

"1. May the General Court constitutionally enact legislation providing that the Supreme Judicial Court could not in any case arising under section 5 of chapter 25 of the General Laws hear any evidence?

"2. May the General Court constitutionally enact legislation providing that the Supreme Judicial Court could not hear any evidence if the case involved the question of confiscation of property?

"3. May the General Court constitutionally enact legislation providing that the Supreme Judicial Court could not hear any evidence if the case did not include the question of confiscation of property?

"4. Would said bill, House, No. 86, if enacted into law be violative of the Fourteenth Amendment to the Constitution of the United States?

"5. Would said bill, House, No. 86, if enacted into law be violative of any other provision of the federal constitution?

"6. Would said bill, House, No. 86, be constitutional if enacted into law?"

Section 5 of c. 25 of the General Laws, to which reference is made in the first question, appears also as § 5 of c. 25 of the Tercentenary Edition. It is the section which governs the review by this court of rulings or orders of the department of public utilities. The portions of the section material to the questions read as follows:

"When so requested by any party interested, the commission [of the department], or any member or members acting for the commission, shall rule upon any question of substantive law properly arising in the course of any proceedings before the commission or any member or members thereof, and any party in interest aggrieved by such ruling may object thereto, and may secure a review thereof as hereinafter provided."

"The supreme judicial court shall have jurisdiction in equity to review, modify, amend or annul any ruling or

order of the commission, or of any member or members representing the commission, but only to the extent of the unlawfulness of such ruling or order."

For reasons which will presently be stated, this section has been interpreted by this court, as applied to rate cases where confiscation of property is claimed, to include a review of the issue of confiscation by this court upon its own independent judgment as to both law and facts. *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 88. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities*, 327 Mass. 81, 85–86. See *Boston Consolidated Gas Co.* v. *Department of Public Utilities*, 327 Mass. 103, 105–106. The primary purpose of the questions seems to be to ascertain whether the method of reviewing facts can constitutionally be controlled by legislation in the manner proposed.

In its order the House refers to three statements by this court contained in two of the decisions just cited. In *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, decided in March, 1949, this court said, at page 88, "It must, therefore, be taken to be the law of this Commonwealth, not often stated, to be sure, but nevertheless unanimously, that the Declaration of Rights guarantees to an owner, who alleges that confiscation of his property will result from a rate order of the department, a fair opportunity for submitting that issue to a court for determination upon its own independent judgment as to both law and facts, and that G. L. (Ter. Ed.) c. 25, § 5, affords him a remedy adequate to enforce that right." And again this court said at page 89, "Our conclusion means that inquiry here on the issue of confiscation is not confined to the findings of the department or to the evidence introduced before the department." In *New England Telephone & Telegraph Co.* v. *Department of Public Utilities*, 327 Mass. 81, decided in February, 1951, at page 85, this court said, "It is elementary that the fixing of rates is not a proper judicial function. On the other hand, where a rate established by a public regulatory body is attacked as confiscatory the

Constitution of this Commonwealth and seemingly still that of the United States require that there be a full opportunity for judicial review as to both fact and law."

For a proper understanding of our answers to the questions transmitted it will be advisable to say a word as to the origin and history of the propositions embodied in the three foregoing statements.

The Supreme Court of the United States has often said that, in all cases where there is an order, legislative in character, prescribing a complete schedule of maximum future rates, "if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287, at page 289.

The expression of the Supreme Court of the United States in the *Ben Avon* case was the culmination of a long development which began almost as soon as the regulation of railroad rates became a matter of serious national concern. Thus as early as the *Railroad Commission Cases,* 116 U. S. 307, decided in 1886, the court held that the "power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretence of regulating fares and freights, the State cannot require a railroad corporation to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law." 116 U. S. at page 331. Only four years later in *Chicago, Milwaukee & St. Paul Railway* v. *Minnesota,* 134 U. S. 418, at page 457, in declaring unconstitutional a statute which attempted to make final the decision of a commission as to the reasonableness of rates, the court said, "It [the statute] deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom

of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice." The result of the case is that the final determination of the fact of confiscation is a judicial question. The quotation from the *Ben Avon* case, decided in 1920, is a rephrasing of what had been, in substance, decided at least thirty years before. The doctrine of that case and others in accord with it was reaffirmed by a majority of the court in *St. Joseph Stock Yards Co.* v. *United States*, 298 U. S. 38, at page 52. These cases have been cited and followed many times. Their doctrine has been frequently criticized, largely in dissenting opinions. We have not thought it necessary to prolong this opinion by citing the numerous cases on the subject both before and after the leading *Ben Avon* and *St. Joseph* cases. Some of them, but by no means all, are cited in *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. at pages 86–89.

Notwithstanding the criticism of these two Supreme Court decisions, and notwithstanding assertions from various apparently competent sources that they are no longer law, we have not been able to discover when and where they have been overruled. One writer announces that the doctrine of these cases has "gradually died," because of subsequent decisions inconsistent with it. [1] Davis, Administrative Law, § 255, at page 919. Perhaps so, but we would prefer to see the death certificate. The doctrine was not regarded as dead in 1947 by the Court of Appeals of New York in *Staten Island Edison Corp.* v. *Maltbie*, 296 N. Y. 374, 381–382; nor in 1948 by a court of three Federal judges in *Atlantic Coast Line Railroad* v. *Public Service Commission of South Carolina*, 77 Fed. Sup. 675, 680–681; nor, in 1948, apparently, by the United States Court of Appeals for the

[1] *New York* v. *United States*, 331 U. S. 284. *Interstate Commerce Commission* v. *Jersey City*, 322 U. S. 503. *Federal Power Commission* v. *Hope Natural Gas Co.* 320 U. S. 591. *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.* 310 U. S. 573.

Seventh Circuit, in *Pittsburgh Steamship Co.* v. *Brown*, 171 Fed. (2d) 175; nor in 1948 by a Federal district judge in *Pichotta* v. *Skagway*, 78 Fed. Sup. 999, 1004; nor by several State courts in decisions rendered subsequent to some of the decisions of the Supreme Court of the United States by which it is said that the doctrine was overruled. *Georgia Public Service Commission* v. *Atlanta Gas Light Co.* 205 Ga. 863, 876. *Public Service Commission* v. *Indianapolis Railways, Inc.* 225 Ind. 30, 39. *State* v. *Department of Public Service of Washington*, 19 Wash. (2d) 200, 218. It is true that in the latest case, *Alabama Public Service Commission* v. *Southern Railway*, 341 U. S. 341, decided in 1951, after our decisions in the *Lowell Gas* case and in the *Telephone* case, Chief Justice Vinson says on page 348, "The fact that review in the Alabama courts is limited to the record taken before the Commission presents no constitutional infirmity. . . . And, whatever the scope of review of Commission findings when an alleged denial of constitutional rights is in issue, it is now settled that a utility has no right to relitigate factual questions on the ground that constitutional rights are involved." It seems to us that what the court had in mind here was an alleged right to introduce evidence before the court as contrasted with the practice of resting the court's decision upon the same evidence that was introduced before the commission. That is a very different question from the one decided in the *Ben Avon* case. We shall say more about that question later. It does not seem to us that the Supreme Court of the United States would intend to overrule the long line of cases to which we have previously referred in such a casual manner as appears in the sentences last above quoted, without citing or referring to any of those cases, particularly such leading ones as the *Ben Avon* and *St. Joseph* cases. The court did cite two cases, one of which, *New York* v. *United States*, 331 U. S. 284, 334–336, holds that there is no constitutional right to have a case heard by a court entirely anew without regard to the proceedings before the commission. This case, however, as we understand it, recog-

nizes the ultimate power of the court to pass upon the fact
of confiscation. The other cited case, *Railroad Commission
of Texas* v. *Rowan & Nichols Oil Co.* 311 U. S. 570, 576,
seems to us to dwell rather upon the caution that should be
exercised in upsetting the findings of the commission upon
conflicting evidence in doubtful cases than upon any theory
that the court lacked the power of decision. This case
must be read in connection with *Railroad Commission of
Texas* v. *Rowan & Nichols Oil Co.* 310 U. S. 573, and with
the modification of the opinion in that case found in 311
U. S. 614. Moreover, Mr. Justice Frankfurter, who wrote
the opinions in both of the *Texas* cases just mentioned, also
wrote a dissent in the *Alabama* case in which he referred to
the *Ben Avon* case in a manner which seems to us incon-
sistent with any belief on his part that that case had been
overruled by either the *Texas* cases or the *Alabama* case.
See 341 U. S. at page 362. Of course it is possible that
even such well established doctrine as that of the *Ben Avon*
and *St. Joseph* cases and all the many other cases in accord
with those cases may be overruled by the Supreme Court
of the United States, or what is practically the same thing,
that court may declare that it has previously overruled
them, but until we can discover with a fair degree of cer-
tainty that the court has done one or the other of these
things, we cannot safely advise the House on the assumption
that it will do either of them. Furthermore, in any event,
the overruling of these decisions would not change the
construction given by this court to the Constitution of
this Commonwealth.

Turning next to the decisions of this court, we find that
in a unanimous opinion given in 1925 by the Justices to the
Senate and House, reported in 251 Mass. 569, at pages 610–
611, all the Justices adopted the statement of the law here-
inbefore quoted from the *Ben Avon* case and added, "That
statement is equally interpretative of arts. 1, 10, and 11 of
the Declaration of Rights of the Constitution of this Com-
monwealth," thereby giving it as their opinion that the
doctrine of the *Ben Avon* case, that there must be provision

for judicial review of facts as well as of law where confiscation is claimed, was as fully applicable to the Constitution of this Commonwealth as it then clearly was held to be applicable to the Constitution of the United States. In 1928, in an actual litigated case, *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, at page 142, this court said, "There must be a fair opportunity for submitting the issue of confiscation or of undue interference with the right of management to a judicial tribunal for determination upon its own independent judgment as to both law and facts," citing the *Ben Avon* case and other cases from the Supreme Court of the United States. Again, in *Horton* v. *Attorney General,* 269 Mass. 503, at page 509, this court said through Chief Justice Rugg, referring to *Opinion of the Justices,* 251 Mass. 569, 610–611, "What there was said, with ample citation of authoritative decisions, is now adopted and affirmed." Then followed *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, where our conclusion that a utility claiming confiscation is entitled to an independent judicial review as to both law and fact was finally rested upon the Constitution of this Commonwealth and not upon the Constitution of the United States. 324 Mass. at page 89. The latest case stating the same doctrine is *Boston Consolidated Gas Co.* v. *Department of Public Utilities,* 327 Mass. 103, 104–105.

The foregoing survey shows clearly that this court announced no new doctrine in the passages quoted in the order of the House from *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 88, 89, and from *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 327 Mass. 81, 85. This court simply restated what had been recognized as an interpretation of the Constitution of the United States for sixty years and as an interpretation of the Constitution of Massachusetts for twenty-six years. In our opinion these interpretations must still be recognized as valid and binding. Certainly the interpretation of the Constitution of this Commonwealth is valid and binding,

even if there is some doubt as to the Constitution of the United States. These interpretations forbid any statute which, in cases where confiscation or violation of the Constitution is claimed, forecloses the right of a utility to submit those issues "to a court for determination upon its own independent judgment as to both law and facts."

We are of opinion, however, that there is no constitutional requirement, even in a case involving a claim of confiscation or of other violation of constitutional right, as to the precise method by which the court must review a commission's findings of fact, provided the method is fully adequate to enable the reviewing court to make certain that it has before it all available pertinent evidence on the constitutional issue and provided that, as to that issue, the court is free to act upon its own independent judgment as to both law and fact. We think it would be constitutional to require that all evidence be first heard and passed upon by the commission and that the reviewing court hear the case on the transcript of that evidence, together with the findings of the commission. The determination of facts by a court upon a transcript of evidence not taken before it is a method of review by no means unknown to our law. But if this method should be adopted we think it would be necessary (1) to lodge in the reviewing court full authority to see to it that, by remanding to the commission or otherwise, the commission should hear and report all pertinent evidence, and (2) that this authority should extend to new evidence necessary to bring the proof as nearly as reasonably possible down to the date of final decision. The court should have control over the evidence applicable to constitutional issues substantially equivalent to that which it has over evidence heard by a master appointed by it. If these requirements are observed we think it would be the duty of the court, at least in the absence of some obstruction not to be anticipated, to conform to a statute providing that the reviewing court should not itself hear evidence.

In a number of the earlier Federal cases decided in accordance with the *Ben Avon* doctrine a master was appointed.

by the court to hear the evidence. See, for example, *Knoxville* v. *Knoxville Water Co.* 212 U. S. 1; *The Minnesota Rate Cases,* 230 U. S. 352. In *Crowell* v. *Benson,* 285 U. S. 22, at pages 63–65, the majority of the court held that under the longshoremen's and harbor workers' compensation act the court must hear evidence de novo on jurisdictional questions. But other cases, including the more recent decisions, have tended toward the view that even cases involving constitutional questions may be presented on the evidence taken before the commission. *Washington* v. *Fairchild,* 224 U. S. 510, 525–528. *New York* v. *United States,* 331 U. S. 284, 334–336. *Alabama Public Service Commission* v. *Southern Railway,* 341 U. S. 341, 348. *Staten Island Edison Corp.* v. *Maltbie,* 296 N. Y. 374, 383–384. This court, we believe, has never finally committed itself to any particular method in such cases as a matter of constitutional law. In *New England Telephone & Telegraph Co.* v. *Department of Public Utilities,* 262 Mass. 137, the case was heard in this court upon the evidence presented to the commission. The court said that no power was given it to rehear facts; that the parties must not withhold evidence from the department and produce it in court; but that "Where, however, there is no finding of fact material to the plaintiff's right to review, this rule does not forbid the presentation of evidence to establish it. Such evidence [this court said] is not offered in rehearing of issues of fact decided by the department, but as the basis in fact to support a claim of right. Unless such evidence is admissible, the right to review given by the statute is not broad enough to secure due process of law, and the statute may be rendered unconstitutional. See *Opinion of the Justices,* 251 Mass. 569, 611, 613. There must be a fair opportunity [the court said] for submitting the issue of confiscation or of undue interference with the right of management to a judicial tribunal for determination upon its own independent judgment as to both law and facts," citing the *Ben Avon* and other cases in the Supreme Court of the United States. In the case in 262 Mass. from which we have just quoted evidence offered

in court was excluded, but the court held that there was no error in this respect, since there was nothing to suggest that fuller or more convincing evidence than was introduced before the commission was sought to be presented to the court. 262 Mass. at pages 141–142. This case seems to lend some support to the contention that, at least in some cases involving constitutional questions, this court might act upon evidence first heard by the commission. The case of *Donham* v. *Public Service Commissioners*, 232 Mass. 309, is explained in *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, at pages 85–86. In other cases where violation of the Constitution has been asserted, our practice has been to appoint a master before whom the case has been heard de novo in accordance with what was for a long time at least the Federal practice. See *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 89; *Boston Consolidated Gas Co.* v. *Department of Public Utilities*, 327 Mass. 103, 104–105. On the other hand, in *New England Telephone & Telegraph Co.* v. *Department of Public Utilities*, 327 Mass. 81, the parties agreed upon certain facts and stipulated that the case should be presented upon the facts agreed and the evidence heard by the department (see page 85) — a course which permitted an immense saving in time and expense, without interfering with the proper handling of the case by the court. During the time while this court has been dealing with cases of this kind under a statute (G. L. [Ter. Ed.] c. 25, § 5) which provides only for a plenary suit in equity and contains no special provisions suitable to govern the hearing of cases where constitutional questions are raised, the court has used its own judgment in determining the manner in which the facts should be presented to it and has been quite naturally solicitous to see to it that requirements of hearing de novo which had been deemed necessary in decisions of the Supreme Court of the United States were observed, and it has naturally adopted the practice familiar in other plenary suits in equity. It does not follow that, when those decisions

as to the manner of presenting questions of fact are expressly or impliedly overruled, a new statute specially regulating the method of presenting the evidence to the reviewing court might not be framed within constitutional limits.

The second requirement above mentioned (that the court's authority over the presentation of evidence to the commission extend to new evidence necessary to bring the proof as nearly as possible down to the date of final decision) seems an unavoidable requirement, if the court is to have the necessary full power to prevent confiscation or other unconstitutional action. Otherwise, in view of the inevitable delays sometimes encountered in the decision of these cases, especially in times of rapidly changing costs, the court might sometimes be compelled to decide upon evidence already outdated and no longer applicable to the existing situation. Moreover, intervening experience may furnish the very best guide and should not be excluded from consideration, especially where violation of the Constitution is at stake. These considerations were emphasized in *Lowell Gas Co.* v *Department of Public Utilities*, 324 Mass. 80, at page 89. The cases from the Supreme Court of the United States there cited show the importance of bringing the evidence down to date. Failure to do this was held error in *Knoxville* v. *Knoxville Water Co.* 212 U. S. 1, 14–15, and in *Atchison, Topeka & Santa Fe Railway* v. *United States*, 284 U. S. 248. Compare, however, *Interstate Commerce Commission* v. *Jersey City*, 322 U. S. 503.

We come now to the questions. We interpret questions 2 and 3 as referring, as question 1 refers, to cases arising under § 5 of c. 25 of the General Laws. These three questions may conveniently be answered together. We answer them as follows: The General Court may constitutionally enact legislation providing that the Supreme Judicial Court could not in cases arising under § 5 of c. 25 of the General Laws hear any evidence, except that, in order to afford the complete review of law and fact which is constitutionally necessary in cases where issues of confiscation or of constitutional right are involved, such legislation must leave in the court,

in such cases, full authority to see to it that, by remanding the case to the commission or otherwise, the court can require the commission to hear and report all pertinent evidence, and that this authority must extend to new evidence necessary to bring the proof as nearly as reasonably possible down to the date of final decision.

Questions 4, 5, and 6 ask us to express an opinion generally as to the constitutionality of the entire bill, House No. 86, without directing our attention to any particular questions or any particular portions of the bill about which the House is in doubt. The Justices have always felt that the Constitution does not require them to answer questions of this kind. *Opinion of the Justices*, 145 Mass. 587, 592. *Opinion of the Justices*, 297 Mass. 559, 566–567. *Answer of the Justices*, 299 Mass. 617. *Opinion of the Justices*, 320 Mass. 773, 782. *Opinion of the Justices*, 321 Mass. 759, 764. In this instance, however, it seems not improper to direct the attention of the House to the fact that the discussion leading to the answers to the first three questions has already shown that the proposed bill, House No. 86, in its present form would be unconstitutional for the reason that it would deprive the court of all power to determine facts in cases involving questions of confiscation or of the denial of constitutional rights. We respectfully request to be excused from further answering questions 4, 5, and 6.

STANLEY E. QUA.
HENRY T. LUMMUS.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, Jr.