**UNITED STATES of America,**
**Plaintiff,**

**v.**

**SHEEHAN PROPERTIES, INCOR-**
**PORATED, Defendant.**

No. 4–67 Civ. 152.

United States District Court
D. Minnesota,
Fourth Division.

June 20, 1968.

———————

Patrick J. Foley, U. S. Atty., by Roland J. Faricy, Asst. U. S. Atty., for plaintiff.

J. Patrick Kittler, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

This matter is before the court on the motion of plaintiff, United States of America, to dismiss the counterclaim of

defendant Sheehan for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted under Rule 12(b) (1) and (6) of the Fed.R.Civ.P. and under Rule 13(d). The action was commenced by the plaintiff pursuant to 28 U.S.C. § 1345, claiming as an endorsee and holder of a promissory note executed by defendant in the amount of $550,000.00 and delivered to Pan-Western Enterprises, Inc., of New Orleans, Louisiana, as partial consideration for the transfer to defendant of all of the shares of stock in Dugger-Holmes, Inc., a Panama corporation.

Defendant by its answer denied liability to plaintiff on the promissory note and in addition interposed a counterclaim against plaintiff grounded on 28 U.S.C. § 1346(a) (b), a part of the Federal Tort Claims Act. Such claim alleges that the defendant was informed by Pan-Western enterprises, with whom defendant was negotiating for the purchase of Dugger-Holmes stock, that Pan-Western had had its principal business dealings with the U. S. government. As it appears from the brief filed in opposition to the motion herein, such dealings were with the Agency for International Development (AID), an agency of the federal government. It is further alleged that defendant was informed by Pan-Western that the plaintiff through "its employees", (presumably of AID) was fully informed concerning the business activities of Pan-Western and Dugger-Holmes. Defendant avers that it inquired of plaintiff concerning Pan-Western and Dugger-Holmes; that plaintiff admitted to having knowledge about the said corporations and undertook to inform the defendant about them; that plaintiff was aware, as set out in defendant's pleading, that:

"* * * the Defendant was about to undertake substantial investment and expense in reliance of said information and did intentionally or negligently and wrongfully omit to inform the Defendant of material facts which were then within the Plaintiff's knowledge and which the Plaintiff then knew were sufficient to cause a reasonable man to decide against undertaking such investment and expense. All of the aforesaid having taken place in the United States of America."

The counterclaim of defendant concludes with the averment that as a direct result of the omission of the plaintiff and the reliance by defendant, the defendant's risk of harm was increased and defendant sustained " * * * great harm to its property through expense and liabilities and will be subjected to continuing great expense in procuring necessary legal and financial assistance." The prayer for relief in the counterclaim is in the sum of $2,250,000.00.

The contention of plaintiff that the counterclaim ought properly to be dismissed is based upon what it considers to be controlling authority with respect to claims against the government brought under 28 U.S.C. § 1346, a part of the Federal Tort Claims Act, the pertinent provisions of which read as follows:

"(b) Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section."

The plaintiff relies on another section of the Federal Tort Claims Act, 28 U.S.C. § 2680 providing in part:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

\* \* \*

(h) Any claim arising out of \* \* \* misrepresentation, deceit or interference with contract rights."

It is the contention of the plaintiff that the counterclaim interposed by the defendant falls within the category of claims excluded by the above-quoted subdivision of the Tort Claims Act since the said claim is based either upon misrepresentation, negligent or intentional, or upon interference with contract rights.

Defendant argues that its counterclaim is grounded upon none of the claims excluded above, but is a claim arising from the separate and independent tort action based upon "negligent performance of undertaking to render services", the allegation of its pleading being that plaintiff "did undertake to perform".

This tort is defined by the Restatement of Torts 2nd, § 323 (1965):

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

A claim based upon the rule above quoted was upheld by the Minnesota Supreme Court in Abresch v. Northwestern Bell Telephone Company, 246 Minn. 408, 75 N.W.2d 206 (1956), in an action against a telephone company for damages allegedly resulting from the company's failure to deliver to a fire department plaintiff's message that his business building was burning. In reversing the lower court's granting of the telephone company's motion for summary judgment, the court stated, at 246 Minn. 408, 416, 75 N.W.2d 211, 212:

"In this limited area, therefore, it should follow that, while the telephone company is under no duty to assume the responsibility of delivering messages in cases of emergency, if it does voluntarily assume such responsibility and thereby leads others to rely on such assumption of duty and to refrain from taking other and more direct action to protect themselves, the company is required to exercise reasonable care in performing the duty so assumed for a failure of which it may become liable in a tort action. Whether there was such assumption of responsibility and whether defendant failed to exercise reasonable care in the performance thereof involve questions of fact which cannot be determined on a motion for summary judgment."

■ However, the mere fact that the cause of action based upon the rule enunciated in the Restatement is recognized in the forum state is not dispositive of whether such a cause of action falls within the scope of the claims permitted under the Federal Tort Claims Act. Such, according to the Supreme Court, " \* \* \* depends solely upon what Congress meant by the language it used in § 2680(h)." United States v. Neustadt, 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961). Indeed, the authority of that case compels a dismissal of the counterclaim in the instant case. In *Neustadt*, the Supreme Court had on review the decision of the Fourth Circuit Court of Appeals holding that a purchaser of residential property who had been furnished a statement reporting the results of an inaccurate F.H.A. inspection and appraisal and who, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value, had a valid claim in "negligence" under the Federal Tort Claims

Act. The Fourth Circuit was of the view that although the plaintiff's claim in that case might have formed the basis for a misrepresentation action, such was "merely incidental" to the underlying basis of the claim, i. e., "the careless making of an excessive appraisal * *" upon which the plaintiff relied to its detriment. United States v. Neustadt, 281 F.2d 596, 601, 602 (4th Cir. 1960).

In reversing the holding of the Fourth Circuit, the Supreme Court stated, at 366 U.S. 705–708, 81 S.Ct. at 1299–1301:

"'* * * the Fourth Circuit reasoned that the FHA appraisal procedure was designed to protect prospective home purchasers; that the Government (through the FHA) therefore 'owed a specific duty' to respondents to make a careful appraisal; and that 'if the government assumes a duty and negligently performs it, a party injured thereby may recover damages from the United States even though the careless performance of the duty may have been accompanied by some misrepresentation of fact.' Id., [281 F.2d] at page 599

Whether or not this analysis accords with the law of States which have seen fit to allow recovery under analogous circumstances, it does not meet the question of whether this claim is outside the intended scope of the Federal Tort Claims Act, which depends solely upon what Congress meant by the language it used in § 2680(h).

To say, as the Fourth Circuit did, that a claim arises out of 'negligence,' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, i. e., *the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,'* as is clearly, if not conclusively, shown by

the authorities set forth in the margin, and which there is every reason to believe Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in § 2680(h). (Emphasis added)

* * *

* * * Certainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending 'some twenty-eight years of congressional drafting and redrafting amendment and counter-amendment.' United States v. Spelar, 338 U.S. 217, 219–220, 70 S.Ct. 10, 11, 94 L.Ed. 3. Moreover, as we have said in considering other aspects of the Act: 'There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so fine-spun and capricious as to be almost incapable of being held in the mind for adequate formulation.' Indian Towing Co. v. United States, 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48."

See also Anglo-American and Overseas Corp. v. United States, 242 F.2d 236 (2nd Cir. 1957); National Mfg. Co. v. United States, 210 F.2d 263 (8th Cir. 1954); Jones v. United States, 207 F.2d 563 (2nd Cir. 1953).

The footnote at the conclusion of the *Neustadt* opinion serves, in the view of this court, to distinguish the instant case from cases akin to *Abresch*, supra. The footnote reads as follows:

"Our conclusion neither conflicts with nor impairs the authority of Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, which held cognizable a Torts Act claim for property damages suffered when a vessel ran aground as a result of the Coast Guard's allegedly negligent failure to maintain the beacon lamp in a lighthouse. Such a claim does not 'arise out of * * * misrepresentation,' any more than does one based upon a motor vehicle operator's negligence in giving a misleading turn sig-

nal. As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of 'misrepresentation,' in the generic sense of that word, but '[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' Prosser, Torts, § 85, 'Remedies for Misrepresentation,' at 702–703 (1941 ed.). also 2 Harper and James, Torts, § resentation,' at 702–703 (1941 ed.). See also 2 Harper and James, Torts, § 29.13, at 1655 (1956).''

It is the court's opinion that the counterclaim set forth in defendant's answer is in fact, as was the claim in *Neustadt*, based upon "the. traditional and commonly understood legal definition of the tort of 'negligent misrepresentation'." Id., at 706, 81 S.Ct. at 1300. The Restatement of Torts, § 552 (1939), defines negligent misrepresentation as follows:

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

(b) the harm is suffered

i) by the person or one of the class of persons for whom the information was supplied and,

ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct in a transaction substantially identical therewith."

The counterclaim follows, in substance, the elements of the tort of negligent misrepresentation as stated above. Defendant asserts, however, that the counterclaim is not within the above Restatement definition because at least two elements thereof are missing, to wit, "in the course of his business or profession", and "intended to influence". Defendant argues that the services undertaken by plaintiff were not in the course of its business or profession "because neither statute nor occupation imposed a duty to perform". However, even if no duty to convey information in aid of defendant's business venture existed initially, surely the defendant must contend that at some point, and, once certain information was disclosed, a duty fully and reasonably to disclose existed. In the absence of any duty whatsoever, obviously there could be no basis for holding the government liable under any theory in tort.

Defendant contends that a second element of the tort of negligent misrepresentation not present in the counterclaim is "intent" on the part of plaintiff to influence the conduct of defendant. However, the counterclaim asserts that:

" * * * Plaintiff * * * *was aware* that Defendant was about to undertake substantial investment and expense in *reliance* * * * and did *intentionally* or negligently and wrongfully omit to inform the Defendant of the material facts * * * which the Plaintiff then *knew* were sufficient to cause a reasonable man to decide against undertaking such investment and expense." (Emphasis added)

Such language appears to comport with the essential elements of negligent misrepresentation as set forth in the Restatement, supra. Furthermore, with respect to both of the asserted variances from a negligent misrepresentation claim, the court may look beyond the literal language in the complaint to ascertain the true nature of the asserted cause of action. Hall v. United States, 274 F.2d 69, 71 (10th Cir. 1959). It is clear that the substance of defendant's counterclaim is that the plaintiff by disclosing certain information concerning the corporations and by "intentionally or negligently" omitting to disclose certain other infor-

mation, misrepresented to the defendant the true business and financial positions of the two corporations, and that the defendant in reliance upon such misrepresentation, was in fact misled to its economic detriment. Such, if it did occur, had to be either intentional or negligent and in either event it follows that defendant's counterclaim is based upon a claim excluded under § 2680(h), supra, and as such is not actionable against the government under the Federal Tort Claims Act. The same must therefore be dismissed.

The counterclaim seems not to fall within the excluded tort classification of "interference with prospective advantage", as the government alternatively urges. However, in view of the disposition above, the question need not be here resolved.

A separate order has been entered dismissing defendant's counterclaim.