518 F.2d 811
 Thomas H. REDMOND, Plaintiff-Appellant,
v.
The UNITED STATES of America, By and Through the SECURITIES
AND EXCHANGE COMMISSION OF the UNITED STATES, a Federal
Agency, and the United States of America by and through the
Treasury Department of the United States, a Federal Agency,
Defendant-Appellee.
 No. 74-1810.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 24, 1975.
Decided June 17, 1975.
 
 1
 Vincent F. Kelley, Anderson, Ind., for plaintiff-appellant.
 
 
 2
 Irving Jaffe, Acting Asst. Atty. Gen., Judith H. Norris, Atty., Appellate Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Stanley B. Miller, U. S. Atty., Indianapolis, Ind., for defendant-appellee.
 
 
 3
 Before PELL and STEVENS, Circuit Judges, and PERRY, Senior District Judge.*
 
 
 4
 PERRY, Senior District Judge.
 
 
 5
 This is an appeal from an order of the District Court granting a motion to dismiss the complaint and dismissing the action for lack of subject matter jurisdiction. Thomas H. Redmond, plaintiff below, filed a complaint for damages under the Federal Tort Claims Act (hereinafter "Act"), 28 U.S.C. § 1346(b) et seq., against the United States of America (hereinafter "Government") by and through the Securities and Exchange Commission of the United States and against the United States of America by and through the Treasury Department of the United States, seeking $8,000,000 in damages for the alleged wrongful conduct of employees, agents and operatives of the Securities and Exchange Commission, the Secret Service, and the Treasury Department in permitting Redmond to be defrauded by one Edward Wuensche, characterized by Redmond as a "securities dealer" and "highly competent confidence man who served 4 prison terms for dealing in stolen securities". The Government filed a motion to dismiss the complaint on the grounds that the court lacked jurisdiction over the subject matter of the action because the claim asserted by Redmond constituted the tort of misrepresentation which, by 28 U.S.C. § 2680(h), is specifically excluded from the coverage of the Act. On June 18, 1974, District Judge Cale Holder entered his judgment granting the motion to dismiss and dismissing the action for lack of subject matter jurisdiction.
 
 
 6
 The sole issue which we must decide is whether Redmond's claim is barred by the "misrepresentation" exception to the Federal Tort Claims Act provided by 28 U.S.C. § 2680(h).
 
 
 7
 Redmond strongly contends that the "misrepresentation" exception of 28 U.S.C. § 2680(h) does not apply here because he is seeking recovery not upon a misrepresentation theory, but on the ground that the Government's employees breached their duty to warn him that he was in imminent danger of becoming the financial victim of Wuensche's criminal propensities (Brief of Appellant at 7, 8).
 
 
 8
 We must first determine whether the tort alleged by Redmond is misrepresentation. To do this we shall examine the allegations set forth in the complaint. A close examination of Redmond's complaint reveals that it contains essentially the following allegations:
 
 
 9
 A. The Government "negligently fashioned an aura of respectability and conferred credibility and trustworthiness upon the defendant Wuensche" (Complaint, P VIII) by:
 
 
 10
 (1) permitting Wuensche to gain the confidence of Redmond and to be accepted as a respectable business man when the Government knew that Wuensche had served four prison terms for dealing in forged securities (P VIII(b));
 
 
 11
 (2) permitting Wuensche to prey upon Redmond when it was known that Wuensche had "worked with top crime syndicate figures" (P VIII(c));
 
 
 12
 (3) permitting Wuensche to enlist the services of Redmond to be used as a decoy in the recovery of a stolen U.S. Treasury bond (P VIII(d));
 
 
 13
 (4) conferring trustworthiness upon Wuensche during the recovery of said bond by "representing to plaintiff that Wuensche was a co-worker of the Secret Service, and as such could be trusted" (P VIII(d));
 
 
 14
 (5) permitting Wuensche to give an impression that he was an undercover agent for the Government (P VIII(e));
 
 
 15
 (6) permitting Wuensche to make unlimited long distance telephone calls at Government expense and to give orders to Government agents and employees, "all of which represented that Wuensche was a trusted public servant, which was false and known by the government to be false" (P VIII(f));
 
 
 16
 (7) permitting Wuensche to furnish the names of two Government officials as personal character references, "which falsely and fraudulently led plaintiff to believe Wuensche was a person of good character, which was false and known by the agents of the government to be false" (P VIII(g));
 
 
 17
 (8) representing to Redmond that Wuensche was a Government employee, "which representation was false and known to be false" (P VIII(h)); and
 
 
 18
 (9) representing to Redmond that Wuensche was a person of substantial means, "which representation was false and known by the government to be false" (P VIII(i)).
 
 
 19
 B. As a direct and proximate result of the Government's failure to disclose to Redmond the "nefarious criminal activities" of Wuensche, when it is or should be apparent to the Government that such failure would cause harm to Redmond, Redmond was caused to rely upon the integrity of Wuensche. (Complaint, P IX).
 
 
 20
 C. Such failure to disclose on the part of the Government "became a plan to aid and abet Wuensche and others in the scheme to defraud plaintiff". (Complaint, P IX).D. As a result of the foregoing acts or omissions of the Government, Redmond was induced to lose $1,065,000 by purchasing and then pledging worthless securities, and suffered substantial injury by the sudden termination of all lines of credit, by the loss of a $100,000-a-year earning capacity, by embarrassment, mental anguish, and humiliation. (Complaint, P X).
 
 
 21
 We agree with Judge Holder that the allegations of the complaint clearly state a course of events calculated to mislead Redmond by a series of mis-statements of fact, half-truths, and deception; that the Government's agents are alleged to have been involved in the dissemination of the misleading information, and that the complaint clearly alleges that the agents were attempting to represent Wuensche as being something he was not. It is clear to us, as it was to Judge Holder below, that the actual facts pleaded make out a case for misrepresentation.
 
 
 22
 Redmond contends, however, that even if the acts and omissions alleged in the complaint do constitute a form of misrepresentation, it is not the kind of misrepresentation meant to be barred from the coverage of the Act. Redmond asserts:
 
 
 23
 . . . If there were representations made by federal officers in this case, they were collateral and incidental to the negligence of those agents in failing to warn the Plaintiff of a danger which they knew to exist. More than misrepresentations which are merely incidental to negligent conduct is required to bring this case within the misrepresentation exception of 28 U.S.C. Sec. 2680(h). . . . (Emphasis added.) Brief of Appellant at 7, 8.
 
 
 24
 Redmond then cites three cases in support of his contention: Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2nd Cir. 1967), cert. denied, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292; United Airlines, Inc. v. Wiener, 335 F.2d 379 (9th Cir. 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549; and Murray v. United States, 327 F.Supp. 835 (D. Utah 1971), aff'd sub nom., United States v. Murray, 463 F.2d 208 (10th Cir. 1972).
 
 
 25
 We must reject this contention for several reasons. First, we agree with the Government that the allegations of false representations contained in Redmond's complaint were the sine qua non in the chain of causative events on which Redmond's claim is founded. Second, a contention similar to Redmond's was rejected in United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), and in United States v. Sheehan Properties, Inc., 285 F.Supp. 608 (D.Minn.1968).
 
 
 26
 In Neustadt, the issue was whether the Government may be held liable, under the Act, to purchasers of residential property who were furnished a statement reporting the results of an inaccurate Federal Housing Administration (FHA) inspection and appraisal and who, in reliance thereon, were induced by the sellers to pay a purchase price in excess of the fair market value of the property. The purchasers, Mr. and Mrs. Neustadt, filed suit under the Act alleging that the FHA's inspection and appraisal had been conducted negligently; that they were justified in relying upon the results of that inspection and appraisal; and that they would not have purchased the property for $24,000 (the purchase price) but for the carelessness and negligence of the FHA. After trial, the District Court found that the Neustadts in good faith relied upon the appraisal in consummating their contract of purchase, and that reasonable care by a qualified appraiser would have warned the Neustadts of serious structural defects in the house. On that basis, the court adjudged the Government liable for the difference between the purchase price and the fair market value at the time of sale. The Court of Appeals for the Fourth Circuit affirmed the District Court's judgment over the Government's strong objection that recovery was barred by the "misrepresentation" exception of 28 U.S.C. § 2680(h). The Court of Appeals deemed § 2680(h) inapplicable for the reason that the misrepresentation was "merely incidental" to the "gravamen" of the claim, i. e., "the careless making of an excessive appraisal so that (the Neustadts were) . . . deceived and suffered substantial loss". 281 F.2d 596 at 602. In order to resolve an apparent conflict between the decision of the Court of Appeals for the Fourth Circuit and the holdings of Courts of Appeals of other Circuits uniformly construing the "misrepresentation" exception of § 2680(h) to preclude recovery on closely analogous facts[1], the Supreme Court granted certiorari and concluded that the interpretation adopted by the Court of Appeals for the Fourth Circuit was erroneous. Said the Supreme Court:
 
 
 27
 To say, as the Fourth Circuit did, that a claim arises out of "negligence", rather than "misrepresentation", when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i. e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation", . . . (Emphasis added.)
 
 
 28
 Regarding the Court of Appeals' assertion that the Government owed respondents a "specific duty" to make and communicate an accurate appraisal of the property, by virtue of the provisions of the National Housing Act, we have carefully examined the rather extensive legislative history of that statute . . . and have found nothing from which we may reasonably infer that Congress intended, in a case such as this, to limit or suspend the application of the "misrepresentation" exception of the Tort Claims Act. . . .
 
 
 29
 It follows that respondents' claim is one "arising out of . . . misrepresentation," within the meaning of § 2680(h), and hence is not actionable against the Government under the Tort Claims Act. . . . 366 U.S. at 706, 708, 711, 81 S.Ct. at 1300, 1301, 1302-1303.
 
 
 30
 In Sheehan Properties, Sheehan interposed under the Act a counterclaim against the Government to recover damages for monetary losses incurred as the result of an unsuccessful investment in stock. In the counterclaim Sheehan alleged that the Government was aware that Sheehan was about to undertake substantial investment and expense in reliance upon faulty and misleading information given him by Government agents and that the Government "did intentionally or negligently and wrongfully omit to inform (Sheehan) of material facts which were then within the (Government's) knowledge and which (the Government) then knew were sufficient to cause a reasonable man to decide against undertaking such investment and expense". 285 F.Supp. at 609. The Government moved to dismiss the counterclaim on the grounds, inter alia, that Sheehan's counterclaim was barred by the "misrepresentation" exception of 28 U.S.C. § 2680(h). The court dismissed the counterclaim, saying:
 
 
 31
 . . . It is clear that the substance of defendant's counterclaim is that the plaintiff by disclosing certain information concerning the corporations and by "intentionally or negligently" omitting to disclose certain other information, misrepresented to the defendant the true business and financial positions of the two corporations, and that the defendant in reliance upon such misrepresentation, was in fact misled to its economic detriment. Such, if it did occur, had to be either intentional or negligent and in either event it follows that defendant's counterclaim is based upon a claim excluded under § 2680(h), supra, and as such is not actionable against the government under the Federal Tort Claims Act. . . . 285 F.Supp. at 612-613.
 
 
 32
 The third reason for rejecting the contention is that the three cases Redmond relies upon are clearly distinguishable from the case at bar. In the first place, all of these cases involved airplane accidents caused by the failure of Government employees to exercise due care in the execution of non-discretionary, operational tasks expressly designated by Government regulation, whereas the complaint in the instant case involves the asserted invasion of interests of a financial or commercial character in the course of business dealings, an allegation to which the tort of misrepresentation has been very largely confined. See Neustadt, supra, 366 U.S. at 711, n. 26, 81 S.Ct. 1294. The court in Ingham, supra, clearly distinguished between the two types of cases, i. e., the airplane-accident cases and the instant case, in the following words:
 
 
 33
 . . . Where the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability. (Citations omitted.) 373 F.2d at 239.
 
 
 34
 The cases cited by Redmond are further distinguishable in that they involved a negligent failure by Government agents to perform a duty the Government had expressly undertaken to provide information and warnings to travelers of the sky. In the instant case Redmond has failed to show that the Government undertook any duty to warn him or anyone else against the danger of dealing with Wuensche.
 
 
 35
 Finally, Redmond, a putative victim of crime, seeks here to recover his losses from the Government for its failure to warn him of Wuensche's criminal activities and propensities. Redmond in essence is thus contending that the Government owed him an actionable duty to protect him, by a suitable warning, from Wuensche's criminal conduct. But does the Government have such an actionable duty? We think not. Redmond has cited no case, and we know of none, which holds that in the absence of statute there is a legally-enforceable duty on the part of the Government to warn or to compensate victims of criminal activity. Courts have consistently rejected the contention that, absent legislation, either the national government or the state government may be held liable for damages resulting from criminal conduct. See, e. g., Turner v. United States, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919), where Turner filed a petition in the Court of Claims against the Creek Nation of Indians and the United States as trustee of Creek funds, to recover damages for the destruction of personal property and the loss of pasture land caused by mob violence. Unanimously holding that Turner had no cause of action, the Court explained its decision in part as follows:
 
 
 36
 The claimant contends that, by the general law, the Creek Nation is liable in damages for the action of the mob which resulted in the destruction of his property . . . .
 
 
 37
 First. No such liability existed by the general law. . . . Like other governments, municipal as well as state, the Creek Nation was free from liability for injuries to persons or property due to mob violence or failure to keep the peace. (Citations omitted.) Such liability is frequently imposed by statute upon cities and counties (Citation omitted); . . . The fundamental obstacle to recovery is not the immunity of a sovereign to suit, but the lack of a substantive right to recover the damages resulting from failure of a government or its officers to keep the peace. 248 U.S. at 357-358, 39 S.Ct. at 110.
 
 
 38
 It cannot be denied that the Government has a duty to maintain law and order, but how best to fulfill this duty is wholly within the discretion of its officers, and § 2680(a) excepts from the Act both discretionary functions and discretionary duties. United States v. Faneca,332 F.2d 872, 875 (5th Cir. 1964), cert. denied, 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268.
 
 
 39
 Although we are not lacking in sympathy for Redmond, we cannot by judicial fiat transform a nonactionable wrong into an actionable wrong.
 
 
 40
 In view of all of the foregoing reasons, we hold that Redmond's claim was barred by the "misrepresentation" exception to the Federal Tort Claims Act. Accordingly, the District Court's order dismissing this action for lack of subject matter jurisdiction is Affirmed.
 
 
 
 *
 Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation
 
 
 [1]
 Jones v. United States, 207 F.2d 563 (2d Cir. 1953); National Mfg. Co. v. United States, 210 F.2d 263 (8th Cir. 1954); Clark v. United States, 218 F.2d 446 (9th Cir. 1954); Miller Harness Co. v. United States, 241 F.2d 781 (2d Cir. 1957); Hall v. United States, 274 F.2d 69 (10th Cir. 1959)